**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| In re: | BKY #25-60780 |
|---|---|
| | Chapter 12 |
| Casey P. Restad, | |
| Debtor. | |

## CHAPTER 12 PLAN OF REORGANIZATION
## DATED JULY 28, 2026

### PART 1: TERM AND EFFECTIVE DATE

This plan shall continue for a period of three (3) years from its effective date. The date of the entry of the order first confirming a plan is the effective date.

### PART 2: LIQUIDATION ANALYSIS

The debtor's net equity in his property, plus the security from the property after deducting the amounts of the secured claims and exemptions, is $2,049,284.00 and the processing fee claim. The net proceeds received shall be paid to Trustee for distribution to other claims. Priority and non-priority unsecured creditors (but not including attorney's fees) will receive no less than $2,049,284.00 over the life of the plan or the total of the allowed claims, whichever is less. The debtors' liquidation analysis is attached to this plan [Exhibit A].

### PART 3: DISPOSABLE INCOME

For the term of this plan, all of the debtor's disposable income (income not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtors and their dependents), regardless of the amount, will be paid to the Trustee. The Trustee shall disburse these funds first to any unpaid priority claims (including administrative expenses and Trustee's fees) and second to non-priority unsecured creditors. The Debtor intends to sell real estate in a sufficient amount to pay for the claim.

### PART 4: LIVING EXPENSES

The debtor's projection of living expenses are $5,000.00 per month. The debtor shall limit his annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

### PART 5: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court or the terms of this plan.

**Class 1: Trustee's Fees.** The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties

under the Bankruptcy Code in administering this case. The debtors shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein. Creditors shall only accept direct payments from the debtor if specified in the Plan.**

**Class 2: Debtor's Attorney's Fees.** Debtor's attorney will apply to the Court for compensation in this case for attorney's fees, administrative work and reimbursement of costs and expenses incurred during the representation of the debtor pre- and post-petition. Upon approval of such compensation by the Court, the debtor shall make three (3) equal annual payments for the fees owed (after application of the debtor's pre-petition retainer) directly to the debtor's attorney on or before February 28, 2027; February 28, 2028; and February 28, 2029. Annual payments will be adjusted as needed to allow for any additional court-approved debtor's attorney's fee applications made after the original application.

## PART 6: SECURED CLAIMS

**Class 1: Secured Claim of Berndt Dairy Farm, Inc.** Berndt Dairy Farm, Inc. holds a claim in the amount of $105,077.00. This claim is secured by the following mortgaged real property owned by the Debtor:

**Property in Otter Tail County, Minnesota, described as follows:**

**South Half (S1/2) of Lot Two (2), Section Seven (7), Township One Hundred Thiry-Six (136) North, Range Forty-Three (43) West & Southeast Quarter of the Southwest quarter (SE1/4-SW1/4) Section Seven (7), Township One Hundred Thirty-Six (136) North, Range Forty-Three (43) West.**

This property is subject to an executed Settlement Agreement see Document 758-767.

This class will be paid pursuant to the terms of the contract. The debtor shall make payments directly to the creditor, and no Trustee fees will be paid on this claim.

**Class 2: FBN Finance, LLC.** Class 2 is the claim of FBN Finance, LLC ("FBN"). This claim is partially secured as it concerns the debtor, though FBN holds additional security against a co-debtor. The treatment of this claim shall be bifurcated, with the secured portion being addressed in this Class 2, and the unsecured portion (as to the debtor) to be treated in Class 1 of Part 8.

The debtor has caused the amount of the mortgage granted pursuant to the Order Authorizing Use of Cash Collateral (Document 61) to be paid upon sale of the property described in Exhibit D which satisfied the mortgage obligation. The $141,697.26 has been paid, leaving the value of the secured claim as to the Debtor at $313,675.00. The unsecured claim of FBN against the Debtor is believed to be $767,000.00 as determined by the Court.

This claim is secured against property of the debtor in the amount of $313,675.00. The debtor shall pay this debt with annual payments due by February 1, beginning in 2027 on a fifteen-year amortization at 6.275% based on the average of the 10-year and 20-year Treasury Rates pursuant to the holding in In re Topp, 75 F.4th 959 (8th Cir. 2023). The debtor shall make payments directly to the creditor, and no Trustee fees will be paid on this claim. The remainder of the claim will be included in Class 1 of Part 8 unsecured claims.

This Plan has no effect on the claim of FBN possesses against Peter Restad. That claim is addressed in Peter Restad's Bankruptcy Case.

**Class 3: Mary Groesbeck.** Mary Groesbeck holds a claim in the amount of 67,713.00, which is secured by a lien on Parcel A, legally described as follows:

**The residential real estate situated at 23361 Lida Drive, Pelican Rapids, in the County of Otter Tail, in the State of Minnesota, and zip code of 56572, known with the full legal description as follows, to wit:**
**That part of the Southeast Quarter of the Southwest Quarter (SE1/4-SW1/4) in Section Twenty (20) and that part of the Northeast Quarter of the Northwest Quarter (NE1/4-NW1/4) in Section Twenty-Nine (29), all in Township One Hundred Thirty-Six (136) North, Range Forty-Two (42) West of the Fifth Principal Meridian in Otter Tail County, Minnesota, described as follows: Commencing at a found iron monument which designates the northwesterly corner of Lot One (1), Block One (1) of Lida West, said plat is on file and of records in the office of the Recorder in said County; thence South 03 degrees 49 minutes 57 seconds East 93.93 feet on an assumed bearing along the westerly line of said Lot One (1) to a found iron monument; thence South 86 degrees 10 minutes 02 seconds West 66 feet to a found iron monument on the westerly line of a dedicated public road according to said Lida West, said point is the point of the beginning; North 03 degrees 49 minutes 57 seconds West 337.95 feet along the westerly line of said dedicated public road to a found iron monument; thence northwesterly continuing along the westerly line of said dedicated public road on a curve concave to the southwest, having central angle of 72 degrees 49 minutes 41 seconds and a radius of 35.00 feet, for a distance of 44.49 feet (chord bearing North 40 degrees 14 minutes 47 seconds West), to a found iron monument at a point of reverse curvature; thence northwesterly continuing along the westerly line of said dedicated public road on a curve concave to the northeast, having a central angle of 47 degrees 39 minutes 12 seconds and a radius of 70.00 feet, for a distance of 58.22 feet (chord bearing North 52 degrees 50 minutes 02 seconds West) to a found iron monument; thence South 87 degrees 49 minutes 02 seconds West 32.62 feet along the southerly line of said dedicated public road to a found iron monument; thence northwesterly continuing along the southerly line of said dedicated public road, on a curve concave to the northeast, having a central angle of 51 degrees 05 minutes 21 seconds and a radius of 333.00 feet, for a distance of 296.93 feet (chord bearing North 66 degrees 38 minutes 17 seconds West) to an iron monument; thence South 48 degrees 54 minutes 23 seconds West 68.58 feet; thence South 08 degrees 15 minutes 35 seconds West 611.45 feet to an iron monument on the northerly line of said dedicated public road; thence South 88 degrees 08 minutes 58 seconds East 270.91 feet along the dedicated public road; thence North 86 degrees 45 minutes 25 seconds East 140.20 feet continuing along the northerly line of said dedicated public road to a found iron monument; thence northeasterly along the northerly and easterly line of said dedicated public road on a curve concave to the northwest, having a central angle of 90 degrees 35 minutes 22 seconds and a radius of 127.00 feet, for a distance of 200.80 feet (chord bearing North 41 degrees 27 minutes 44 seconds East) to the point of beginning. The above-described tract contains 6.16 acres.**
**Together with all hereditaments and appurtenances belonging thereto (the Property). Purchaser has previously taken possession of the Property as a tenant prior to the date hereof.**

This class will be paid pursuant to the terms of the contract for deed.. The Debtor is current on monthly payments, and the debt is $67,713.00 as of July 28, 2026. The debtor shall make payments directly to the creditor, and no

3

Trustee fees will be paid on this claim.

**Class 4: William Januszewski.** Class 4 consists of the secured claim of William Januszewski in the amount of $91,655.59 and secured by property described in Exhibit D. This property was sold and this claim was paid in full from the sale proceeds. No Trustees fees will be paid on this class.

**Class 5: Minnesota National Bank.** Minnesota National Bank ("MNB") holds a first-priority mortgage lien against some of the Debtor's real property described in Exhibit FF and is oversecured. MNB shall retain its liens until payment in full of its allowed secured claim.

The allowed fully secured claim of Minnesota National Bank presently includes a principal loan balance of $738,548.00. As an oversecured creditor, Minnesota National Bank shall be entitled to all amounts allowable under 11 U.S.C. § 506(b), including pre-petition and post-petition interest, attorney's fees, costs, expenses, and other charges recoverable under the loan documents and applicable law.

The Debtor shall pay Minnesota National Bank pursuant to the existing terms of the parties' loan documents, except that the payment due in 2026 shall be paid within thirty (30) days after confirmation. These payment terms shall control unless and until such time as part of the property in Exhibit FF is sold.

The Debtor may seek court approval to sell a portion of the real property described in Exhibit FF. In the event the Court authorizes a sale and the sale is consummated, the Debtor shall remit the net sale proceeds to Minnesota National Bank at closing unless otherwise ordered by the Court.

Pending any sale, and in the event a sale does not occur, the indebtedness owed to Minnesota National Bank shall continue to be paid and administered in accordance with the terms of the parties' loan documents, including applicable interest, maturity, fees, costs, and charges, except as otherwise expressly provided by this Plan or further order of the Court.

**Class 6: Amber Restad.** Class 6 consists of the claim of spouse Amber Restad. Amber Restad and the Debtor are involved in active dissolution proceedings, filed on April 23, 2024. This claim is undetermined at this point. An adversary proceeding has been commenced to determine this claim value. Additionally, upon confirmation of this plan, the debtor and Amber Restad will resume state court dissolution proceedings to determine her marital rights, if any, to property of the estate/debtor, which will provide a claim value.

To the extent that Amber Restad's claim involves property of the bankruptcy estate, the automatic stay is lifted upon confirmation to allow the state court to determine an equitable division of marital property which may include property of the estate, subject to final approval of the bankruptcy court.

Upon determination of this claim amount, the debtor will modify this plan, if necessary, to provide for payment of this claim. The amount owed and method of satisfaction can be determined by the state court and must be approved by this Court. Any payment on this claim will not impact the rights of the secured creditors.

## PART 7: PRIORITY AND OTHER ADMINISTRATIVE EXPENSE CLAIMS

Part 7 consists of all claims entitled to priority under § 507, which shall be paid prior to payment of non-priority, general unsecured claims. These payments will be paid through the Chapter 12 Trustee.

A. Minnesota Department of Revenue filed a priority claim in the amount of $12,204.62 arising from

unpaid withholding taxes for parcel ending December 31, 2023, and December 31, 2024. In addition, there is a non-priority claim arising from penalties and pre-petition interest with the respect to said claim. This claim will be paid in equal annual payments of $3,051.15 starting December 31, 2026 and each December thereafter until paid.

B. IRS Claim filed a priority claim in the amount of $130,432.50. The claim will be paid in annual payments over 4 years with the first payment due by December 30, 2026 as allowed by 11 U.S.C. Amber Restad has liability for this debt as she was responsible for paying and filing the necessary papers. The Debtor was not aware of the debt, until after the filing the petition. This claim will be paid from the liquidation of assets also set off against Amber Restad's marital interest.

## PART 8: NON-PRIORITY UNSECURED CLAIMS

**Class 1: Allowed Non-Priority Unsecured Claims.** Class 1 consists of allowed non-priority unsecured claims, including, but not limited to, allowed non-priority unsecured claims of creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, allowed non-priority unsecured claims resulting from the value of a secured claim being of a value less than the creditor's collateral, allowed non-priority claims of those secured creditors whose claims are determined to be unsecured, allowed non-priority governmental claims arising under 11 U.S.C. § 1232, and allowed non-priority unsecured claims for taxes and penalties which are not included in any other Class. Payments made to this Class shall be disbursed by the Trustee pro-rata based on the amount of allowed claims existing on the date of disbursement. Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim. The debtors shall make payments when settlement money from the proceeds from John Deere Financial claim is received, if any. The Debtor shall pay the sale proceeds in Debtor's Attorney trust account to the Trustee upon confirmation of the Plan for distribution by the Trustee. This class includes the following allowed claims:

| Creditor | Claim Amount |
|---|---|
| Environmental Tillage Systems | $5,468.02 |
| JPMorgan Chase Bank, N. A. s.b.m.t Chase Bank USA, N.A | $8,798.59 |
| ABST Law | $15,320.04 |
| PHI Financial | $90,035.93 |
| FBN Finance, LLC | $767,000.00 |
| Peter Restad | $225,000.00 |
| Debbi Restad | $220,500.00 |
| Total: | $1,332,122.58 |

**Class 2: Rabo AgriFinance.** Class 2 consists of the unsecured claims Rabo AgriFinance in the amount of $184,385.20.00. This claim is disputed and is unsecured. No timely proof of claim was filed, and as a result, no payment is due to the creditor.

**Class 3: John Deere Financial, f.s.b. and Midwest Machinery** Class 3 consists of the claims of John Deere Financial, f.s.b. ("JDF") in the amount of $80,677.10 and Midwest Machinery in the amount of $34,657.11. These creditors filed timely proofs of claims, but JDF and Midwest Machinery had possession of the collateralized equipment and disposed of the collateral in violation of the automatic stay and in a non-commercially reasonable manner. Debtor retains his claim against JDF and Midwest Machinery for wrongful disposal of equipment post-petition and for failure to hold a commercially reasonable sale. The Debtor believes that the damage will exceed the claims. The debtor objects to these claims, and this plan provides for

no payment on this class.

**Class 4: Syngenta Seed, LLC.** Class 4 consists of the claim of Syngenta Seeds, LLC. This claim is disputed by the debtor and is unsecured. This creditor did not file a timely claim. As a result no payment is due to this class of creditors.

**Class 5: Park Region Coop.** Class 5 consists of the unsecured claims of Park Region Coop. This creditor did not file a timely claim. As a result, no payment is due to this class of creditors.

**Class 6: RCIS.** Class 6 consists of the unsecured claims of RCIS. This creditor did not file a timely claim. As a result, no payment is due to this class of creditors.

**Class 7: RDO Equipment.** Class 5 consists of the unsecured claims of RDO Equipment. This creditor did not file a timely claim. As a result, no payment is due to this class of creditors.

## PART 9: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

Governmental claims arising under 11 U.S.C. § 1232 (1) shall be treated as non-priority unsecured claims arising before the date on which the petition is filed; (2) shall be treated under Class 1 of Part 8 of the plan (Non-Priority Unsecured Claims), provided that the claim is not otherwise disallowed, (3) shall not be entitled to priority treatment under 11 U.S.C. § 507; and (4) shall be discharged in accordance with 11 U.S.C. §§ 1228 & 1232. If the debtor files a tax return after the filing of the petition for a period in which a claim under 11 U.S.C. § 1232(a) arises, and the claim relates to the tax return, the debtor shall serve notice of the claim pursuant to 11 U.S.C. § 1232(d)(2). Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim.

## PART 10: EXECUTORY CONTRACTS AND LEASES

Part 10 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this Part. The debtor assumes the following executory contracts and leases: NONE

## PART 11: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to continue his farming operations and make the plan payments out of farm or other income. The debtor's projections of income, operating expenses, and plan payments are attached as Exhibit B.

## PART 12: RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference. Either the debtors or any creditor may record this plan and the Order confirming this plan with the Office of the County Recorder of each county in which the debtor has an interest in real estate without violation of the automatic stay.

6

## PART 13: GENERAL PROVISIONS

1.      The Court shall retain jurisdiction over the debtor and his property for the term of the plan.  Property of the estate vests in the Debtor upon dismissal, conversion, or completion of plan payments due during the term of the plan.

2.      As part of the continuing farm operation, the debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee.  The debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

3.      For the duration of the Chapter 12 plan, the debtor shall seek court approval to obtain credit or incur debt outside the ordinary course of business.

4.      For the duration of the Chapter 12 plan, the debtors shall seek court approval to use, sell, or lease property outside the ordinary course of business.

/e/David C. McLaughlin
FLUEGEL, ANDERSON, MCLAUGHLIN
& BRUTLAG, CHARTERED
David C. McLaughlin
Attorney for Debtor
129 2nd Street NW
Ortonville, MN  56278
(320) 839-2549
Attorney License #127383
dmclaughlin@fluegellaw.com

Signed:       /s/ Casey P. Restad

Debtor 1: Casey P. Restad

Dated: July 28, 2026

7