**EXHIBIT A**

# MEDIATED SETTLEMENT AGREEMENT

**Mediation: Amber Restad v. Casey Restad**
**Case File: 56-FA-24-905**
**MEDIATION: Thursday August 6, 2026**
**Location: Karkela, Hunt & Cheshire, PLLP, 450 West Main Street, Perham MN 56573**
**Mediator: Lisa Borgen | PowerHouse Mediation**

The parties and their counsel, Paul Hunt, Esq. for Amber Restad and Carrie Backman for Casey Restad met for mediation with Judge Lisa Borgen (Ret.), mediator, on this date and have agreed to resolve matters upon on the following terms:

1. Binding Agreement: This agreement is legally binding and enforceable. This agreement was reached following mediation with Lisa Borgen | PowerHouse Mediation. Pursuant to Rule 114 and the Minnesota Civil Mediation Act, Minnesota Statutes sections 572.31 through 572.40, the parties understand that:

   a. Each party had sufficient opportunity to review the agreements expressed in writing below with his or her respective attorney.
   b. They have entered into this agreement intelligently and voluntarily and understand that it is a binding agreement that affects their respective legal rights.
   c. The agreement will be submitted to the Court for its approval.

2. Mediator - No Duty to Parties: Each party understands that the mediator does not represent either of the parties. As such, the neutral provided neither party with legal advice, nor had any duty to protect the legal rights of either party.

3. Full Disclosure Representation: Each party represents that they have mediated in good faith and have made a full and fair disclosure of their financial circumstances to the other party to the best of their knowledge. Each party understands that this agreement is being entered into based upon those disclosures.

4. Terms of Settlement:

   a. **Dissolution of Marriage:** The parties shall be granted a dissolution of marriage from each other.

   b. **Real Property:** Casey is awarded all Real Property except as otherwise stated in paragraph g herein. Casey shall be awarded all liens, mortgages, judgments and any other debt associated with or secured by any and all of the Real Properties and shall indemnify and hold Amber harmless therefrom.

   c. **Personal Property:**

i. Amber shall receive any and all personal property within her possession. Amber shall also receive the 2019 Ford Expedition presently in her possession. If any debt remains against the vehicle, Casey shall be awarded the debt against the vehicle.

ii. Casey shall receive any and all personal property within his possession. Additionally, Casey shall receive his vehicle, all farm equipment, all crop inputs, fertilizer, and any and all other tangible assets associated with the farm.

d. **Financial Accounts:**

i. Amber shall receive any and all financial accounts in her name solely, including all banking accounts, retirement accounts, and investment accounts. Amber shall also receive any life insurance policies held in her name.

ii. Casey shall receive all financial accounts in his name solely, including all banking accounts, retirement accounts and investment accounts. Casey shall also receive any life insurance policies held in his name.

iii. The children shall be awarded their individual accounts. Casey and Amber shall be listed as joint account holders on the accounts for the children. Neither party shall be allowed to remove funds from the children's accounts without the written consent of the other party.

iv. Casey shall receive all business interests in the farming operation and any other business interests associated with Shada Seed. This includes all business assets, accounts, and debts.

e. **Debts:**

i. Amber shall be responsible for all student loans in her name and the promissory note owed to Amber's parents.

ii. Casey shall be awarded all other debt stated in the Bankruptcy action except for the debt awarded to Amber herein. This includes Casey being responsible for all debt associated with the Minnesota Department of Revenue and IRS through December 31, 2025.

iii. Casey will specifically indemnify and hold Amber harmless from any debt obligation incurred during the marriage not otherwise awarded to her in paragraph d(i) herein.

iv. If a debt is not disclosed- the party incurring the debt shall be responsible for such and shall be subject to the indemnity clauses herein.

f. **Spousal Maintenance:**

i. In consideration of the property settlement herein, neither party shall be entitled to any maintenance or alimony from the other. The parties expressly waive the right to

collect from the other any maintenance or alimony now or in the future and agree to a *Karon* Wavier.

g. **Property Settlement:**

i. In lieu of a domestic support obligation, Amber shall receive the total amount of $660,000.00 in value of the marital estate. The parties' shall submit to the Bankruptcy Court both options noted below for payment of the property equalization payment owed to Amber from Casey:

i. **OPTION 1.** Amber shall receive the 13.91 acre parcel associated with the "Hagerup" Property free and clear of any encumbrances or Judgments, including all outbuildings and the homestead located on the property. The value of the "Hagerup" Property shall be deemed to be $500,000.00. The remainder of the $660,000.00 shall be paid by way of payment as immediate as possible as determined after approval by the Bankruptcy Court in the amount of $100,000.00 from Casey to Amber utilizing the trust funds currently held by the Bankruptcy Court. The remaining $60,000.00 shall be payable in accordance with the terms of the Chapter 12 Bankruptcy Plan.

ii. **OPTION 2.** Should the Bankruptcy Court reject Option 1 noted herein regarding the property equalization payment then, the Bankruptcy Court shall have discretion regarding the payment terms of the $660,000.00 cash property equalization payment owed to Amber from Casey.

h. **Attorneys Fees:** Neither party is awarded their attorneys fees and costs through the date of mediation (August 6, 2026).

i. **Restoration of Maiden Name.** Amber shall be granted a restoration of her Maiden Name: Amber Nicole Henegar.

j. Any and all other issues not otherwise addressed herein are hereby reserved.

5. Court Approval: This Mediated Settlement Agreement is subject to approval by the Court. The parties agree to execute all documents necessary to incorporate the terms of this agreement into a Stipulation, Marital Termination Agreement, and Judgment and Decree, or other appropriate Order of the Court. The parties understand that the Court must review and approve the agreement before it becomes a final enforceable order. Attorney Hunt, Esq. agrees to draft the Court Order incorporating the terms of this agreement and circulate the proposed Order for review and all relevant signatures.

6. Mediation-Binding Arbitration as to Terms of the Release: The mediator may assist the parties in clarifying or memorializing the terms of this agreement but shall not be responsible for drafting the final legal documents. In the event the parties are unable to agree as to the language in the Settlement Agreement, they agree they shall submit the disputed language to Lisa Borgen for a Mediation-Binding

Arbitration process limited solely to the language and consistent with the intent of the parties. The Mediation Agreement signed by the parties shall govern the mediator's fees and payment.

7. Digital Signatures: The parties agree that a digital signature shall serve the same purpose as a physical written signature. If an attorney signs on behalf of a client that signature shall indicate their authority to do so related to the instant mediation.

8. Certificate of Authority to Settle: The party representatives who sign this Mediated Settlement Agreement certify they have full authority to enter into this settlement agreement.

**Signature of all parties and counsel:**

Parties:

Amber Restad

Casey Restad

Counsel:

Paul Hunt, Esq.

Carrie Backman, Esq.