UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re: Bky. No. 25-60780
Chapter 12

Casey P. Restad,

Debtor.

---

FBN Finance, LLC c/o
Compeer Financial, PCA and
Compeer Financial, FLCA,
as attorney-in-fact and servicing
agent for FBN Finance, LLC,

Adv. No. ____________

Plaintiff,

vs.

Casey P. Restad,

Defendant.

---

**ADVERSARY COMPLAINT**

---

Plaintiff FBN Finance, LLC c/o Compeer Financial, PCA and Compeer Financial, FLCA, as attorney-in-fact and servicing agent for FBN Finance, LLC (collectively, "**FBN** "), as and for its Adversary Complaint against Defendant Casey P. Restad ("**Casey Restad**"), states and alleges as follows:

**PARTIES**

1. FBN is a Delaware limited liability company authorized to do business in the State of Minnesota, and which has a registered office germane to this proceeding located at 2780 Snelling Avenue N, Suite 101, Roseville, Minnesota 55113.

2. Casey Restad is, according to his bankruptcy schedules, a Minnesota resident residing at 23361 Lida Dr., Pelican Rapids, Minnesota 56572.

3. FBN executed a Power of Attorney irrevocably appointing Compeer Financial, PCA and Compeer Financial, FLCA (collectively, "**Compeer**") as FBN's true and lawful attorney-in-fact, with full power on behalf of FBN, to ask for, require, demand, or receive any and all loan payments and claims for money due or to become due under any and all loans and all related loan documents originated by FBN in which Compeer holds a participation interest. A true and correct copy of FBN's executed Power of Attorney is attached hereto and made apart hereof as **Exhibit A**.

**JURISDICTION AND VENUE**

4. This adversary proceeding is brought pursuant to Bankruptcy Rule 7001 and arises under 11 U.S.C. § 523. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 7001(f) and Local Rule 7004.

5. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157.

6. Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1409.

7. FBN consents to entry of final orders or judgment by this Court.

**GENERAL FACTUAL BACKGROUND**

8. Casey Restad conducts crop farming operations in Otter Tail County, Minnesota, on land that he owns and/or rents from other individuals.

9. Casey Restad's father is Peter Restad. Casey Restad's mother is Deborah Restad, a/k/a Deborah Lynne Restad. Peter Restad and Deborah Restad are married to each other.

**<u>Note 6300</u>**

10. Upon information and belief, on or around April 10, 2023, an individual identifying himself as Peter Restad entered into a Loan and Security Agreement with several exhibits incorporated therein, including without limitation a credit note, in the principal amount of

$500,000.00 (collectively, "**Original Note 6300**") with FBN. A true and correct copy of the Original Note 6300 is attached hereto and made apart hereof as **Exhibit B**.

11. Upon information and belief, on or around April 10, 2023, an individual identifying herself as Deborah Lynne Restad executed a Spousal Consent to the Original Note 6300.

12. On November 4, 2024, FBN, Casey Restad, and an individual identifying himself as Peter Restad entered into a Loan Modification Agreement related to the Original Note 6300 ("**Note 6300 Modification Agreement**") which, among other things, added Casey Restad as a borrower to said note and extended the Original Note 6300 maturity date to December 1, 2024. A true and correct copy of the Note 6300 Modification Agreement is attached hereto as **Exhibit C**.

13. The Original Note 6300 and the Note 6300 Modification Agreement are collectively referred to herein as "**Note 6300**."

14. Casey Restad and Peter Restad have each defaulted under the terms of Note 6300, which default includes, but is not necessarily limited to, failing to repay Note 6300, in full, on or before the December 1, 2024 maturity date.

**<u>Note 7400</u>**

15. Upon information and belief, on or around February 17, 2023, an individual identifying himself as Peter Restad entered into a Loan and Security Agreement with several exhibits incorporated therein, including without limitation a credit note, in the principal amount of $500,000.00 (collectively, "**Original Note 7400**") with FBN. A true and correct copy of the Original Note 7400 is attached hereto and made apart hereof as **Exhibit D**.

16. Upon information and belief, on around February 17, 2023, an individual identifying herself as Deborah Lynne Restad executed a Spousal Consent to the Original Note 7400.

17. On November 4, 2024, FBN, Casey Restad, and an individual identifying himself as Peter Restad entered into a Loan Modification Agreement related to the Original Note 7400 ("**Note 7400 Modification Agreement**") which, among other things, added Casey Restad as a borrower to said note and extended the Original Note 7400 maturity date to December 1, 2024. A true and correct copy of the Note 7400 Modification Agreement is attached hereto as **Exhibit E**.

18. The Original Note 7400 and the Note 7400 Modification Agreement are collectively referred to herein as "**Note 7400**."

19. Casey Restad and Peter Restad have each defaulted under the terms of Note 7400, which default includes, but is not necessarily limited to, failing to repay Note 7400, in full, on or before the December 1, 2024 maturity date.

20. Note 6300 and Note 7400 are collectively referred to herein as the "**Notes**."

21. As of the date of Casey Restad's bankruptcy filing (i.e., December 19, 2025), the indebtedness due and owing to FBN under the Notes was $1,198,104.44, exclusive of accruing and unpaid interest incurred after December 19, 2025, and further exclusive of attorneys' fees, costs, and expenses incurred after December 19, 2025 (the "**Indebtedness**").

**Collateral**

22. To secure the repayment of the Indebtedness, the Original Note 6300 and the Original Note 7400 each contained a security agreement (collectively the "**Security Agreements**"), wherein both Casey Restad and Peter Restad each granted FBN a continuing security interest in the "Collateral." *See* Exhibit B, page 11, § 6.1; Exhibit D, page 11, § 6.1.

23. The Notes define "Collateral" as "collectively, all right, title and interest of the Borrower in, to and under the following personal property, whether now or hereafter existing, whether planted or to be planted, whether grown or to be grown, whether now owned or hereafter

acquired, and wherever located: all crops, including all annual and perennial crops and products thereof, either before or after harvest, and all additions and substitutions thereof, growing or planted, or to be grown or to be planted, on the real property.[,']" as well as all the other personal property further defined and identified as the Collateral in the Notes. *See e.g.,* Exhibit B, page 20 (defining "Collateral"); Ex. C, page 1 (adding additional personal property to the definition of "Collateral"); Exhibit D, page 20, (defining "Collateral"); Ex. E, page 1 (adding additional personal property to the definition of "Collateral").

24. FBN perfected its security interest in the Collateral by filing various UCC-1 Financing Statements with the Minnesota Secretary of State's Office between Febraury 24, 2023 and February 12, 2025. A true and correct copy of FBN's applicable UCC Financing Statements, as amended, are attached hereto and made apart hereof as **Exhibit F.**

25. FBN also filed a CNS-1 Form with the Minnesota Secretary of State's Office on January 27, 2025. A true and correct copy of FBN's applicable CNS-1 Form is attached hereto and made apart hereof as **Exhibit G**.

**<u>CASEY RESTAD'S FORGERY OF PETER RESTAD'S SIGNATURES ON THE NOTES</u>**

26. FBN entered into the above-referenced Notes in reliance upon Peter Restad's financial condition and ability to collateralize the repayment of the Indebtedness.

27. Upon information and belief (but unbeknownst to FBN at the time that the Notes were executed), Casey Restad forged Peter Restad's Docusign e-signatures on the Original Note 6300, the Note 6300 Modification Agreement, the Original Note 7400, and Note 7400 Modification Agreement, respectively, without Peter Restad's prior authorization or permission.

28. Specifically, upon information and belief, on or around February 17, 2023, Casey Restad intentionally forged his father's e-signature on the Original Note 7400 to induce FBN to

provide financing to "Peter Restad" when, in fact, that financing was fraudulently obtained by and diverted to Casey Restad as a result of Casey Restad's forgery of Peter Restad's Docusign e-signature on the Original Note 7400.

29. A few months later, upon information and belief, on or around April 10, 2023, Casey Restad intentionally forged his father's e-signature on the Original Note 6300 to induce FBN to provide additional financing to "Peter Restad" when, in fact, that additional financing was fraudulently obtained by and diverted to Casey Restad as a result of Casey Restad's forgery of Peter Restad's Docusign e-signature on the Original Note 6300.

30. Then, on or around November 4, 2024, Casey Restad, upon information and belief, once again intentionally forged his father's e-signatures on the Note 6300 Modification Agreement and the Note 7400 Modification Agreement, respectively, wherein Casey Restad fraudulently misrepresented to FBN that Peter Restad was, among other things, reaffirming the Indebtedness as of November 4, 2024 and consenting to an extension of the financing that had been previously obtained under the Original Note 6300 and Original Note 7400, respectively.

31. Upon information and belief, Casey Restad made additional false misrepresentations to FBN in connection with executing the Notes by using one or more false email addresses and telephone numbers for Peter Restad to purportedly "verify" that Peter Restad was the applicant seeking financing (and later financing extensions) from FBN.

32. Upon information and belief, Casey Restad attempted to conceal his fraud by listing his parents' true mailing address as a part of Peter Restad's applications to FBN for financing and financing extensions prior to the execution of each of the Notes. In doing so, Casey Restad was able to temporarily conceal his fraudulent submissions to FBN by listing an accurate mailing address for Casey Restad's parents while simultaneously using false email addresses and/or phone

numbers to falsely "verify" his parents' identities via Docusign in connection with executing each of the Notes on or around February, 17, 2023, April 10, 2023, and November 4, 2024, respectively.

33. FBN disbursed loan funds to the individual identifying himself as Peter Restad following the execution of the Original Note 6300 and the Original Note 7400 based upon the financial condition of Peter Restad and his ownership of a substantial amount of personal property that FBN intended to use to secure the repayment of said original notes. FBN would not have disbursed any loan funds in connection with either the Original Note 6300 and/or the Original Note 7400 without Peter Restad pledging the Collateral defined in the Security Agreements.

34. FBN would not have disbursed any loan funds in connection with either the Original Note 6300 and/or the Original Note 7400 without first receiving fully executed Spousal Consents to both of said original notes from Deborah Lynne Restad.

35. FBN would not have extended the maturity dates of the two above-referenced original notes in either the Note 6300 Modification Agreement and/or the Note 7400 Modification Agreement had FBN known on or around November 4, 2024 that Casey Restad intended to affix his father's e-signature on both the Note 6300 Modification Agreement and the Note 7400 Modification without Peter Restad's express authorization.

36. Prior to Casey Restad's Chapter 12 bankruptcy filing on December 19, 2025, FBN commenced a state court breach of contract and replevin action against both Casey Restad and Peter Restad in Otter Tail County, Court File No. 56-CV-25-2236 (the "**State Court Action**").

37. In both the State Court Action and Peter Restad's subsequently filed Chapter 12 case, Bky No. 26-60019-WJF, Peter Restad has given inconsistent testimony but has indicated that he denies his liability to FBN under the Notes.

38. If Peter Restad is not liable under the Notes and has not pledged Collateral to secure the Indebtedness, then the Indebtedness due and owing to FBN under the Notes will be significantly undercollateralized, thereby significantly jeopardizing the likelihood that the Indebtedness will be paid back, in full, to FBN.

**COUNT I**
**Exception to Discharge Under 11 U.S.C. § 523(a)(2)(A)**

39. FBN restates the allegations set forth above, as though fully set forth herein.

40. Casey Restad is not entitled to a discharge of debt due and owing to FBN pursuant to the provisions of 11 U.S.C. § 523(a)(2)(A).

41. Casey Restad obtained financing from the Bank as a result of Casey Restad's false pretenses, false representations, and fraudulent activities.

42. As a direct result of Casey Restad's actions, Casey Restad's obligations to FBN are not dischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(2)(A).

**COUNT II**
**Exception to Discharge Under 11 U.S.C. § 523(a)(2)(B)**

43. FBN restates the allegations set forth above, as though fully set forth herein.

44. Casey Restad obtained money, extensions, renewal, and/or refinancing of credit by submitting financial information that was materially false with regards to Casey Restad's and Peter Restad's financial condition and status.

45. FBN reasonably relied upon the financial information submitted by Casey Restad in approving the loans and advancing monies under the loans.

46. Casey Restad made the false financial statements with the intent to mislead FBN so that FBN would approve loans to Peter Restad and Casey Restad.



4901-6147-7016

47. As a result of Casey Restad's submission of false financial information to FBN, upon which FBN relied, Casey Restad's obligations to FBN under the Notes are not dischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(2)(B).

**COUNT III**
**Exception to Discharge Under 11 U.S.C. § 523(a)(6)**

48. FBN restates the allegations set forth above, as though fully set forth herein.

49. Casey Restad is not entitled to a discharge of the debt due and owing to FBN pursuant to the provisions of 11 U.S.C. § 523(a)(6).

50. Casey Restad engaged in a pattern of fraudulent conduct by being willful and causing malicious injury to FBN by repeatedly submitting the Notes with Peter Restad's forged signatures on the same, which caused FBN to disburse loan funds with the understanding that Peter Restad had the necessary repayment capacity and sufficient assets to collateralize the Notes to enable Peter Restad to repay the Indebtedness. Now, because of Casey Restad's fraudulent conduct and malicious behavior directed to FBN, the Indebtedness is or may not be sufficiently collateralized.

51. As a direct result of Casey Restad's willful actions and fraudulent conduct, Casey Restad's actions have caused and will continue to cause malicious injury to FBN such that Casey Restad's obligations to FBN are not dischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(6).

**WHEREFORE**, FBN prays for an Order of this Court:

a. Determining that Casey Restad's obligations to FBN are not dischargeable pursuant to the provisions of 11 U.S.C. § 523(a);

b. Entering judgment against Casey Restad for the non-dischargeable debt, in an amount to be determined at trial;

c. Awarding FBN its costs, disbursements, and attorneys' fees incurred in connection with this matter; and

d. For such other relief as the Court deems just and equitable.

Dated this 2nd day of September, 2026.

/s/ Rick J. Halbur

Rick J. Halbur #0395396
rhalbur@gislason.com
GISLASON & HUNTER LLP
2700 South Broadway
P. O. Box 458
New Ulm, MN 56073-0458
Phone: 507-354-3111
Fax: 507-354-8447

*Attorneys for Plaintiff*