**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: BKY 25-60780

Chapter 12

Casey P. Restad,

Debtor

# NOTICE OF HEARING ON CONFIRMATION OF MODIFIED CHAPTER 12 PLAN OF REORGANIZATION DATED OCTOBER 2, 2026 [ECF 130]

PLEASE TAKE NOTICE that the Court will hold a hearing on the Confirmation of Modified Chapter 12 Plan Dated October 2, 2026, at **1:30 p.m**. on **Friday, November 20, 2026**. The hearing will be conducted telephonically. Please contact Judge Fisher's Courtroom Deputy by email at mnb_fisher_hearings@mnb.uscourts.gov(link sends e-mail) or by telephone at 651-848-1061 to obtain the dial-in information. Dial-in instructions for telephonic hearings will also be displayed the day prior to the hearing on Judge Fisher's public calendar here: https://www.mnb.uscourts.gov/judges-calendars. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

A copy of the modified plan was served upon all parties October 2, 2026, after the filing.

OBJECTIONS TO CONFIRMATION: An objection to confirmation of the Plan shall be made under Local Rule 3015-3. Seven days prior to the hearing is the last day to timely deliver an objection, and ten days prior to the hearing is the last day to timely mail an objection. The objection must be filed not later than one day after service.

Dated this 7th day of October 2026.

Respectfully submitted,

FLUEGEL, ANDERSON, MCLAUGHLIN,
& BRUTLAG, CHARTERED

/e/ David C. McLaughlin
David C. McLaughlin
Attorney for Debtor
129 2nd Street NW
Ortonville, MN 56278
(320) 839-2549
Attorney License #127383
dmclaughlin@fluegellaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: BKY #25-60780
Chapter 12

Casey P. Restad.

Debtor.

# MODIFIED CHAPTER 12 PLAN OF REORGANIZATION DATED OCTOBER 2, 2026

## PART 1: TERM AND EFFECTIVE DATE

This plan shall continue for a period of three (3) years from its effective date. The date of the entry of the order first confirming a plan is the effective date.

## PART 2: LIQUIDATION ANALYSIS

The debtor's net equity in his property, plus the security from the property after deducting the amounts of the secured claims and exemptions, is $1.944.893.03 and the processing fee claim. The net proceeds received shall be paid to Trustee for distribution to other claims. Priority and non-priority unsecured creditors (but not including attorney's fees) will receive no less than $ $1.944,893.03 over the life of the plan or the total of the allowed claims, whichever is less. The debtors' liquidation analysis is attached to this plan [Exhibit A].

## PART 3: DISPOSABLE INCOME

For the term of this plan, all of the debtor's disposable income (income not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtors and their dependents), regardless of the amount, will be paid to the Trustee. The Trustee shall disburse these funds first to any unpaid priority claims (including administrative expenses and Trustee's fees) and second to non-priority unsecured creditors. The Debtor intends to sell real estate in a sufficient amount to pay for the claim.

## PART 4: LIVING EXPENSES

The debtor's projection of living expenses are $5,000.00 per month. The debtor shall limit his annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## PART 5: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court or the terms of this plan.

**Class 1: Trustee's Fees.** The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties

under the Bankruptcy Code in administering this case. The debtors shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein. Creditors shall only accept direct payments from the debtor if specified in the Plan.**

**Class 2: Debtor's Attorney's Fees.** Debtor's attorney will apply to the Court for compensation in this case for attorney's fees, administrative work and reimbursement of costs and expenses incurred during the representation of the debtor pre- and post-petition. Upon approval of such compensation by the Court, the debtor shall make three (3) equal annual payments for the fees owed (after application of the debtor's pre-petition retainer) directly to the debtor's attorney on or before February 28, 2027; February 28, 2028; and February 28, 2029. Annual payments will be adjusted as needed to allow for any additional court-approved debtor's attorney's fee applications made after the original application.

## PART 6: SECURED CLAIMS

**Class 1: Secured Claim of Berndt Dairy Farm, Inc.** Berndt Dairy Farm, Inc. holds a claim in the amount of $105,077.00. This claim is secured by the following mortgaged real property owned by the Debtor:

**Property in Otter Tail County, Minnesota, described as follows:**

**South Half (S1/2) of Lot Two (2), Section Seven (7), Township One Hundred Thiry-Six (136) North, Range Forty-Three (43) West & Southeast Quarter of the Southwest quarter (SE1/4-SW1/4) Section Seven (7), Township One Hundred Thirty-Six (136) North, Range Forty-Three (43) West.**

Except for the May 2026 payment, this class will be paid pursuant to the terms of the contract. The debtor shall make payments directly to the creditor, and no Trustee fees will be paid on this claim. The May 2026 payment in the amount of $15,654.28 will be paid on or before December 15, 2026 by the Debtor.

**Class 2: FBN Finance, LLC.** Class 2 is the claim of FBN Finance, LLC ("FBN"). This claim is partially secured as it concerns the debtor, and FBN holds additional security against a co-debtor. The treatment of this claim shall be bifurcated, with the secured portion being addressed in this Class 2, and the unsecured portion (as to the debtor) to be treated in Class 1 of Part 8.

The debtor has caused the amount of the mortgage granted pursuant to the Order Authorizing Use of Cash Collateral (Document 61) to be paid upon sale of the property described in Exhibit D which satisfied the mortgage obligation. The $141,697.26 has been paid, leaving the value of the secured claim as to the Debtor at $313,675.00. The unsecured claim of FBN against the Debtor is believed to be $767,000.00 as determined by the Court.

The claim is secured against property of the debtor in the amount of $313,675.00. The debtor shall pay $313,675.00, with annual payments due by February 1, beginning in 2027 on a seven-year amortization at 6.275% based on the average of the 10-year and 20-year Treasury Rates pursuant to the holding in In re Topp, 75 F.4th 959 (8th Cir. 2023). The debtor shall make payments directly to the creditor, and no Trustee fees will

be paid on this claim. The remainder of the claim will be included in Class 1 of Part 8 unsecured claims and paid through the Trustee.

This Plan has no effect on the claim of FBN possesses against Peter Restad. That claim is addressed in Peter Restad's Bankruptcy Case.

For so long as the secured indebtedness remains due to Bank, Debtor will comply with the following requirements:

1. Debtor shall provide Bank with copies of all reports provided to the United States Trustee, by forwarding the same electronically to Bank's counsel of record simultaneous with their transmission to the Trustee's office. All reports and documents required to be supplied in this paragraph to Bank will be supplied directly from Debtor to Bank following confirmation.
2. Debtor shall maintain insurance on all property subject to mortgages and security interests in favor of Bank, with deductibles consistent with those carried historically, with Bank named as loss payee, or an additional insured where applicable, insuring such property for its full, insurable value against perils covered by fire and extended coverage policies of insurance.
3. Debtor shall provide Bank with copies of all receipts, invoices, bills of sale, or other documents evidencing the purchase or sale of farm products by Debtor.

**Class 3: Mary Groesbeck.** Mary Groesbeck holds a claim in the amount of 67,713.00, which is secured by a lien on Parcel A, legally described as follows:

**The residential real estate situated at 23361 Lida Drive, Pelican Rapids, in the County of Otter Tail, in the State of Minnesota, and zip code of 56572, known with the full legal description as follows, to wit:**
**That part of the Southeast Quarter of the Southwest Quarter (SE1/4-SW1/4) in Section Twenty (20) and that part of the Northeast Quarter of the Northwest Quarter (NE1/4-NW1/4) in Section Twenty-Nine (29), all in Township One Hundred Thirty-Six (136) North, Range Forty-Two (42) West of the Fifth Principal Meridian in Otter Tail County, Minnesota, described as follows:**
**Commencing at a found iron monument which designates the northwesterly corner of Lot One (1), Block One (1) of Lida West, said plat is on file and of records in the office of the Recorder in said County; thence South 03 degrees 49 minutes 57 seconds East 93.93 feet on an assumed bearing along the westerly line of said Lot One (1) to a found iron monument; thence South 86 degrees 10 minutes 02 seconds West 66 feet to a found iron monument on the westerly line of a dedicated public road according to said Lida West, said point is the point of the beginning; North 03 degrees 49 minutes 57 seconds West 337.95 feet along the westerly line of said dedicated public road to a found iron monument; thence northwesterly continuing along the westerly line of said dedicated public road on a curve concave to the southwest, having central angle of 72 degrees 49 minutes 41 seconds and a radius of 35.00 feet, for a distance of 44.49 feet (chord bearing North 40 degrees 14 minutes 47 seconds West), to a found iron monument at a point of reverse curvature; thence northwesterly continuing along the westerly line of said dedicated public road on a curve concave to the northeast, having a central angle of 47 degrees 39 minutes 12 seconds and a radius of 70.00 feet, for a distance of 58.22 feet (chord bearing North 52 degrees 50 minutes 02 seconds West) to a found iron monument; thence South 87 degrees 49 minutes 02 seconds West 32.62 feet along the southerly line of said dedicated public road to a found iron monument; thence northwesterly continuing along the southerly line of said dedicated public road, on a curve concave to the northeast, having a central angle of 51 degrees 05 minutes 21 seconds and a radius of 333.00 feet, for a distance of 296.93 feet (chord bearing North 66 degrees 38 minutes 17 seconds West) to an**

**iron monument; thence South 48 degrees 54 minutes 23 seconds West 68.58 feet; thence South 08 degrees 15 minutes 35 seconds West 611.45 feet to an iron monument on the northerly line of said dedicated public road; thence South 88 degrees 08 minutes 58 seconds East 270.91 feet along the dedicated public road; thence North 86 degrees 45 minutes 25 seconds East 140.20 feet continuing along the northerly line of said dedicated public road to a found iron monument; thence northeasterly along the northerly and easterly line of said dedicated public road on a curve concave to the northwest, having a central angle of 90 degrees 35 minutes 22 seconds and a radius of 127.00 feet, for a distance of 200.80 feet (chord bearing North 41 degrees 27 minutes 44 seconds East) to the point of beginning. The above-described tract contains 6.16 acres.**
**Together with all hereditaments and appurtenances belonging thereto (the Property). Purchaser has previously taken possession of the Property as a tenant prior to the date hereof.**

This class will be paid pursuant to the terms of the contract for deed. The Debtor is current on monthly payments, and the debt is $67,713.00 as of July 28, 2026. The debtor shall make payments directly to the creditor, and no Trustee fees will be paid on this claim.

**Class 4: William Januszewski.** Class 4 consists of the secured claim of William Januszewski in the amount of $91,655.59 and secured by property described in Exhibit D. This property was sold and this claim was paid in full from the sale proceeds. No Trustees fees will be paid on this class. The net proceeds of $1,109,799.03 from the sale of the collateral securing this claim remain in trust. Under this Plan, said proceeds are released to the Chapter 12 Trustee to make plan payments as appropriate as provided herein.

**Class 5: Minnesota National Bank.** Minnesota National Bank ("MNB") holds a first-priority mortgage lien against certain of the Debtor's real property described in Exhibits C (the "Lake Lot") and FF (the "Tillable Acres") and is oversecured. MNB shall retain all of its liens and other rights under its loan documents except as expressly provided herein. By agreement, and provided for the marital termination agreement by the Court.

MNB shall release its mortgage on the 13.91-acre homestead portion of the real property described in Exhibit FF, free and clear of any encumbrances. MNB's liens in the remainder of the real property described in Exhibit FF and Exhibit C ensure that MNB remains oversecured. Amber Restad shall be released from the Mortgage debt as well.

The allowed fully secured claim of MNB includes all amounts owing under the applicable loan documents, including principal, accrued pre-petition and post-petition interest, late charges, attorney's fees, costs, expenses, and other charges allowable under 11 U.S.C. § 506(b), the loan documents, and applicable law.

The Debtor intends to sell, subject to court approval, the Tillable Acres encumbered by MNB's mortgage and identified on Exhibit FF at a gross sales price of not less than $710,000. All net sale proceeds shall be paid directly by the debtor to MNB at closing and applied to MNB's indebtedness.

Until the sale of the Tillable Acres is consummated and MNB receives the net sale proceeds, the Debtor shall continue to make all payments required under the existing loan documents, except as expressly modified herein. The payment due for 2026 in the amount of $65,260.91 shall be paid to MNB on or before January 31, 2027. If the sale has not been consummated by January 31, 2027, all amounts then due under the

existing loan documents shall also be timely paid. Nothing in this Plan shall extend the January 31, 2027 maturity date of the existing indebtedness except as expressly provided below following consummation of the sale.

Upon consummation of a sale of the Tillable Acres and MNB's actual receipt of all net sale proceeds required to be paid to it, MNB shall: (a) release from its mortgage the approximately thirteen (13) acre homestead parcel; and (b) release Amber Restad from her personal liability on the indebtedness. Neither release shall become effective until MNB has actually received the required net sale proceeds.

MNB shall retain its mortgage and lien against the Lake Lot and any other collateral not expressly released pursuant to the preceding paragraph.

Following MNB's receipt of the net proceeds from the sale of the Tillable Acres and payment of all amounts otherwise required to be paid to MNB through the date of such sale, the remaining indebtedness owed to MNB shall be restructured as follows: the remaining principal balance, together with all accrued and unpaid interest, fees, attorney's fees, costs, expenses, and other amounts owing to MNB, shall bear interest at the rate of 7.75% per annum and shall be amortized in equal monthly payments over a period of forty-eight (48) months, with the payment amount established so that the indebtedness is paid in full no later than forty-eight (48) months after commencement of such payments. These payments will be paid directly by the debtor.

Except as expressly modified by this Plan, all terms and conditions of MNB's existing loan documents shall remain in full force and effect. MNB shall retain its liens on all collateral not expressly released under this Plan until its allowed secured claim and all other amounts owing to MNB have been indefeasibly paid in full.

**Class 6: Amber Restad.** Class 6 consists of the claim of spouse Amber Restad. Amber Restad and the Debtor are involved in active dissolution proceedings, filed on April 23, 2024. Amber Restad holds a marital interest in various property of the bankruptcy estate. In mediation ordered by the state court, Amber Restad and the Debtor agreed to valuing Amber Restad's claim in the amount of $660,000.00. To pay this claim, Debtor shall do as follows:

A. Within the later of 14 days of confirmation and within 10 days of the state court's approval of the parties' dissolution of marriage, Debtor will surrender to Amber Restad the 13.91-acre homestead portion of the real property described in Exhibit FF, free and clear of any encumbrances, which the Debtor and Amber Restad value at $500,000.00. The remainder of parcel described as FF shall be transferred to Casey Restad by Warranty Deed. The lien of Minnesota National Bank is accepted by the Debtor. This shall be accomplished by warranty deed. The Debtor and Amber Restad shall each pay their own attorneys' fees but shall equally share the recording fees and any other ordinary closing costs from the closing company for such transfer;
B. Within the later of 14 days of confirmation of this Plan and within 10 days of the state court's approval of the parties' dissolution of marriage, the Trustee shall pay $100,000.00 from the Januszewski sales proceeds held in trust, pursuant to this Court's order dated May 12, 2026 (Doc 78), to Amber Restad; AND
C. Over the term of the Plan, the Debtor shall pay to Amber Restad equal annual payments of $20,000.00, the sum of which will equal $60,000. The first of these payments shall be made by November 20, 2027. The debtor will make these payments directly to Amber Restad.

To the extent that Amber Restad's claim involves property of the bankruptcy estate, the automatic stay is lifted upon confirmation to allow the state court to approve the Debtor's and Amber Restad's agreement on

her marital interest claim. The Debtor filed a motion to approve the settlement agreement with Amber Rested ( see Docket 105), which was heard and approved. The approval by the State Court will be sought and is expected to be approved. The Debtor's payments and indemnification obligations owed to Amber Restad pursuant to the terms of this Plan and the parties' Mediated Settlement Agreement dated August 6, 2026 shall be deemed to be non-dischargeable in bankruptcy.

**Class 7: Midwest Machinery.** Class 13 is the Claim of Midwest Machinery in the amount of $34,657.11. The claim will be treated as secured and paid by 3 payments of $11,552.37 due every year on January 15, commencing January 15, 2027. The claim is secured by the 618C corn head. This claim will be paid directly by the debtor.

## PART 7: PRIORITY AND OTHER ADMINISTRATIVE EXPENSE CLAIMS

Part 7 consists of all claims entitled to priority under § 507, which shall be paid prior to payment of non-priority, general unsecured claims. These payments will be paid through the Chapter 12 Trustee except as set forth below.

A. Minnesota Department of Revenue filed two priority claims in the total amount of $12,204.62. The claim will be paid by the Trustee using the sale proceeds from the Januszewski sale, as referenced in Part 6, Class 4.
B. IRS Claim filed a priority claim in the amount of $108,284.89. The claim will be paid by the Trustee using the sale proceeds from the Januszewski sale, as referenced in Part 6, Class 4.

## PART 8: NON-PRIORITY UNSECURED CLAIMS

**Class 1: Allowed Non-Priority Unsecured Claims.** Class 1 consists of allowed non-priority unsecured claims, including, but not limited to, allowed non-priority unsecured claims of creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, allowed non-priority unsecured claims resulting from the value of a secured claim being of a value less than the creditor's collateral, allowed non-priority claims of those secured creditors whose claims are determined to be unsecured, and allowed non-priority unsecured claims for taxes and penalties which are not included in any other Class. This class includes the following currently allowed claims:

| Creditor | Claim Amount |
|---|---|
| IRS (non-priority) | $879.47 |
| State of Minnesota (non-priority) | $5,393.17 |
| Environmental Tillage Systems | $5,468.02 |
| JPMorgan Chase Bank, N. A. s.b.m.t Chase Bank USA, N.A | $8,798.59 |
| ABST Law | $15,320.04 |
| John Deere Financial (see class 7 – debtor intends to object) | $80,677.78 |
| Deere & Company (see class 7 – debtor intends to object) | $44,293.66 |
| PHI Financial | $90,035.93 |
| FBN Finance, LLC | $767,000.00 |
| Peter Restad | $225,000.00 |
| Debbi Restad | $220,500.00 |
| **Total:** | **$1,463,366.66** |

Nothing in this Part shall restrict the debtor. Trustee. or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim. After the Trustee's payment of $100.000 payment to Amber Restad under Part 6. Class 6. and the Trustee's payment of $120.489.51 to priority claimants under Part 7. the Trustee will disburse the remainder of the Januszewski sales proceeds. less Trustee's fees. to this class. The Debtor shall pay the remainder of these claims in full by the end of the term of the plan. Payments made to this Class shall be disbursed by the Trustee pro-rata based on the amount of allowed claims existing on the date of disbursement.

**Class 7: Deere & Company** Class 7 consists of claim #5 of John Deere Financial in the amount of $80.677.78 and claim #6 of Deere & Company in the amount of $44,293.66. The creditors filed timely proofs of claim. but the creditors had possession of the collateralized equipment and disposed of the collateral in violation of the automatic stay and in a non-commercially reasonable manner. Debtor retains his claim against these creditors for wrongful disposal of equipment post-petition and for failure to hold a commercially reasonable sale. The Debtor believes that the damage will exceed the claims. The debtor objects to these claims and will file necessary objections. If the disposition of the Claim Objections deems these claims allowed. to the extent that they are allowed. these claims will be included in Part 8. Class 1. If the claims are entirely disallowed. they shall receive no distribution under this claim. To the extent that the Debtor's claims against these creditors yields any proceeds. said proceeds will be turned over to the Chapter 12 Trustee for distribution under Part 8. Class 1.

**Class 8: Rabo AgriFinance.** Class 8 consists of the unsecured claims Rabo AgriFinance in the amount of $184.385.20.00. This claim is disputed and is unsecured. No timely proof of claim was filed, and as a result. no payment is due to the creditor.

**Class 9: Syngenta Seed, LLC.** Class 9 consists of the claim of Syngenta Seeds. LLC. This claim is disputed by the debtor and is unsecured. This creditor did not file a timely claim. As a result no payment is due to this class of creditors.

**Class 10: Park Region Coop.** Class 10 consists of the unsecured claims of Park Region Coop. This creditor did not file a timely claim. As a result. no payment is due to this class of creditors.

**Class 11: RCIS.** Class 11 consists of the unsecured claims of RCIS. This creditor did not file a timely claim. As a result. no payment is due to this class of creditors.

**Class 12: RDO Equipment.** Class 12 consists of the unsecured claims of RDO Equipment. This creditor did not file a timely claim. As a result. no payment is due to this class of creditors.

## PART 9: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

The debtor will not utilize Section 1232.

## PART 10: EXECUTORY CONTRACTS AND LEASES

Part 10 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this Part. The debtor assumes the following executory contracts and leases: NONE

## PART 11: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to continue his farming operations and make the plan payments out of farm or other income. The debtor's projections of income, operating expenses, and plan payments are attached as Exhibit B.

## PART 12: RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference. Either the debtors or any creditor may record this plan and the Order confirming this plan with the Office of the County Recorder of each county in which the debtor has an interest in real estate without violation of the automatic stay.

## PART 13: GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the debtor and his property for the term of the plan. Property of the estate vests in the Debtor upon dismissal, conversion, or completion of plan payments due during the term of the plan.

2. As part of the continuing farm operation, the debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

3. For the duration of the Chapter 12 plan, the debtor shall seek court approval to obtain credit or incur debt outside the ordinary course of business.

4. For the duration of the Chapter 12 plan, the debtors shall seek court approval to use, sell, or lease property outside the ordinary course of business.

/s/ David C. McLaughlin
FLUEGEL, ANDERSON, MCLAUGHLIN
& BRUTLAG, CHARTERED
David C. McLaughlin
Attorney for Debtor
129 2nd Street NW
Ortonville, MN 56278
(320) 839-2549
Attorney License #127383
dmclaughlin@fluegellaw.com

Signed: /s/ Casey P. Restad

Debtor 1: Casey P. Restad

Dated: October 2, 2026

LIQUIDATION ANALYSIS

**EXHIBIT A**

RESTAD

| Asset | Value | Lien | 2nd Lien | Marital Interest of Amber Restad * | Exemption | NE Assets |
|---|---|---|---|---|---|---|
| Real Estate: Parcel A - Casey's House | $ 320,000.00 | $ 74,319.00 | $ - | $ 30,000.00 | $ 215,681.00 | $ - |
| Real Estate: Parcel B - Berndt Dairy Farm | $ 392,820.00 | $ 105,607.00 | $ - | $ 30,000.00 | | $ 257,213.00 |
| Real Estate: Parcel C - Lake Lot | $ 494,700.00 | $ 40,000.00 | | $ - | $ 294,319.00 | $ 160,381.00 |
| Real Estate: Parcel D Januszewski 282 acres | $ 1,343,151.88 | $ 91,655.59 | $ 141,697.26 | $ 100,000.00 | $ - | $ 1,009,799.03 |
| Real Estate: Parcel E Shop & Skinny Land | $ 468,000.00 | | | | | $ 468,000.00 |
| Real Estate: Parcel FF Haugerup Property | $ 1,260,000.00 | $ 760,000.00 | | $ 500,000.00 | | $ - |
| Dog | $ 1.00 | | | | $ 1.00 | $ - |
| Checking, bank accounts | $ 1.35 | $ 1.35 | | | | $ - |
| Appliances/Furniture | $ 5,000.00 | | | | $ 5,000.00 | $ - |
| Electronics | $ 2,000.00 | | | | $ 2,000.00 | $ - |
| Clothing | $ 2,500.00 | | | | $ 2,500.00 | $ - |
| Farm Equipment Proceeds | $ 301,675.00 | $ 288,675.00 | | | $ 13,000.00 | $ - |
| Ford F-150 79 | $ 1,500.00 | | | | | $ 1,500.00 |
| Ford Expedition 2019 | $ 16,000.00 | | | $ 16,000.00 | | $ - |
| Ford Expedition 2021 | $ 30,000.00 | | | | $ 10,000.00 | $ 20,000.00 |
| SeeDoo | $ 3,000.00 | | | | | $ 3,000.00 |
| Dock | $ 23,500.00 | | | | $ 13,500.00 | $ 10,000.00 |
| Baseball Card Collection | | | | | | $ - |
| Education | $ 9,858.00 | | | | $ 9,858.00 | $ - |
| Inputs | $ 15,000.00 | | | | | $ 15,000.00 |
| Life Insurace - Term | $ - | | | | $ - | $ - |
| Claims Against Deere | $ - | $ - | | | $ - | $ - |
| Totals | $ 4,688,707.23 | $ 1,360,257.94 | $ 141,697.26 | $ 676,000.00 | $ 565,859.00 | $ 1,944,893.03 |

* Amber Restad's marital interest, as settled in the dissolution proceeding, to be approved by the Bankruptcy Court.

The value of Parcel D is the Value of what it was sold for (1,400,000.00 minus closing costs).
The value of Parcel FF was deduced $100,000 to account for the Debtor and Amber Restad's agreeement that the 13.91 acre homesite was worth $500,000.

# EXHIBIT B

| November 2026 Cash Prices CHS | |
|---|---|
| Corn Price | $ 4.05 |
| Soybean Price | $ 10.22 |

| | Price/Ton | Price/lb |
|---|---|---|
| Urea | $ 575 | $ 0.29 |
| AMS | $ 515 | $ 0.26 |
| Potash | $ 505 | $ 0.25 |
| DAP | $ 815 | $ 0.41 |

| | Price/Gal |
|---|---|
| Zinc 9% | $ 13.50 |

| | Seed Price/Unit | Crop Insurance - 70% MP Coverage |
|---|---|---|
| Corn | $ 145.00 | $ 6.43 |
| Soybeans | $ 51.00 | $ 3.78 |

| Field | Acres | 2026 Crop | Yield | Total Bu. | Price | Total Rev. | Rev./Acre |
|---|---|---|---|---|---|---|---|
| Egge Conor's | 24 | Corn | 150 | 3,600 | $ 4.05 | $ 14,580 | $ 608 |
| Egge Stone Pit | 55 | Corn | 165 | 9,075 | $ 4.05 | $ 36,754 | $ 668 |
| MK's East Olaf | 17 | Corn | 165 | 2,805 | $ 4.05 | $ 11,360 | $ 668 |
| Egge Dotty's | 62 | Corn | 200 | 12,400 | $ 4.05 | $ 50,220 | $ 810 |
| Grant Scheer's | 292 | Soybeans | 60 | 17,520 | $ 10.22 | $ 179,054 | $ 613 |
| North of Berndt's | 40 | Soybeans | 55 | 2,200 | $ 10.22 | $ 22,484 | $ 562 |
| North of Jason's | 22 | Soybeans | 55 | 1,210 | $ 10.22 | $ 12,366 | $ 562 |
| Total | 512 | | | | | | |

| Field | Pot. #'s | K Cost/Ac. | DAP #'s | DAP Cost/Ac. | AMS #'s | S Cost/Ac. | Urea #'s | N Cost/Ac. | Zn Rate | Price/Ac | Fert. Exp. | Fert. Exp/Ac. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Egge Conor's | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 | $ 4,109 | $ 171 |
| Egge Stone Pit | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 | $ 9,415 | $ 171 |
| MK's East Olaf | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 | $ 2,910 | $ 171 |
| Egge Dotty's | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 | $ 10,614 | $ 171 |
| Grant Scheer's | - | $ - | - | $ - | 0 | $ - | 0 | $ - | | $ - | $ - | $ - |
| North of Berndt's | - | $ - | - | $ - | 0 | $ - | 0 | $ - | | $ - | $ - | $ - |
| North of Jason's | - | $ - | - | $ - | 0 | $ - | 0 | $ - | | $ - | $ - | $ - |
| Total | | | | | | | | | | | $ 27,048 | |

| Field | Seed Variet | Seed Exp. | Seed Exp/Ac. | Chem. Exp. | Chem. Exp/Ac. | Rent Exp. | Rent Exp./Ac. | Crop Ins. | Total Exp | Op. Margin | Op. Inc/Ac. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Egge Conor's | E612Conv | $ 1,216 | $ 51 | $ 526 | $ 21.93 | $ 3,000 | $ 125 | $ 91 | $ 8,944 | $ 5,636 | $ 238.63 |
| Egge Stone Pit | E612-Conv | $ 2,791 | $ 51 | $ 1,206 | $ 21.93 | $ 6,875 | $ 125 | $ 208 | $ 20,496 | $ 16,258 | $ 299.38 |
| MK's East Olaf | E612-Conv | $ 863 | $ 51 | $ 373 | $ 21.93 | $ 2,125 | $ 125 | $ 64 | $ 6,335 | $ 5,025 | $ 299.38 |
| Egge Dotty's | E612-Conv | $ 3,596 | $ 58 | $ 1,360 | $ 21.93 | $ 7,750 | $ 125 | $ 234 | $ 23,554 | $ 26,666 | $ 433.88 |
| Grant Scheer's | Enlist | $ 14,892 | $ 51 | $ 13,117 | $ 44.92 | $ 63,580 | $ 218 | $ 1,878 | $ 93,466 | $ 85,588 | $ 299.54 |
| North of Berndt's | Enlist | $ 2,040 | $ 51 | $ 1,797 | $ 44.92 | $ - | $ - | $ 257 | $ 4,094 | $ 18,390 | $ 466.18 |
| North of Jason's | Enlist | $ 1,122 | $ 51 | $ 988 | $ 44.92 | $ - | $ - | $ 141 | $ 2,252 | $ 10,115 | $ 466.18 |
| Total | | $ 26,522 | | $ 19,367 | | $ 83 330 | | $ 2,873 | $ 159,140 | | |

| | |
|---|---|
| Revenue | $ 326,818.60 |
| Total Fertilizer | $ 27,047.63 |
| Total Seed | $ 26,522.00 |
| Total Chemcial | $ 19,366.62 |
| Total Crop Ins. | $ 2,873.46 |
| Total Rent | $ 83,329.80 |
| Total Inputs | $ 159,139.51 |
| Operating Inc. | $ 167,679.10 |

| | |
|---|---|
| Fuel | $ (12,500.00) |
| Electric & Phone | $ (900.00) |
| R&M | $ (3,000.00) |
| Real Estate Taxes | $ (13,312.00) |
| Other | $ (5,000.00) |
| Projected Living Expenses | $ (100,375.09) |
| Other Farm Income - Brad | $ 21,000.00 |
| Government Payments - Farmer Bridge Assistance by 2/28/26 | $ 45,696.12 |
| Net Profit | $ 99,288.13 |