UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re: BKY #25-60780
Chapter 12

Casey P. Restad,

Debtor.

# MODIFIED CHAPTER 12 PLAN OF REORGANIZATION DATED NOVEMBER 2, 2026

## PART 1: TERM AND EFFECTIVE DATE

This plan shall continue for a period of three (3) years from its effective date. The date of the entry of the order first confirming a plan is the effective date.

## PART 2: LIQUIDATION ANALYSIS

The debtor's net equity in his property, plus the security from the property after deducting the amounts of the secured claims and exemptions, is $1,944,893.03 and the processing fee claim. The net proceeds received shall be paid to Trustee for distribution to other claims. Priority and non-priority unsecured creditors (but not including attorney's fees) will receive no less than $ $1,944,893.03 over the life of the plan or the total of the allowed claims, whichever is less. The debtors' liquidation analysis is attached to this plan [Exhibit A].

## PART 3: DISPOSABLE INCOME

For the term of this plan, all of the debtor's disposable income (income not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtors and their dependents), regardless of the amount, will be paid to the Trustee. The Trustee shall disburse these funds first to any unpaid priority claims (including administrative expenses and Trustee's fees) and second to non-priority unsecured creditors.

## PART 4: LIVING EXPENSES

The debtor's projection of living expenses are $5,000.00 per month. The debtor shall limit his annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## PART 5: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court or the terms of this plan.

**Class 1: Trustee's Fees.** The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties

under the Bankruptcy Code in administering this case. The debtors shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein. Creditors shall only accept direct payments from the debtor if specified in the Plan.**

**Class 2: Debtor's Attorney's Fees.** Debtor's attorney will apply to the Court for compensation in this case for attorney's fees, administrative work and reimbursement of costs and expenses incurred during the representation of the debtor pre- and post-petition. Upon approval of such compensation by the Court, the debtor shall make three (3) equal annual payments for the fees owed (after application of the debtor's pre-petition retainer) directly to the debtor's attorney on or before February 28, 2027; February 28, 2028; and February 28, 2029. Annual payments will be adjusted as needed to allow for any additional court-approved debtor's attorney's fee applications made after the original application.

## PART 6: SECURED CLAIMS

**Class 1: Secured Claim of Berndt Dairy Farm, Inc.** Berndt Dairy Farm, Inc. holds a claim in the amount of $105,077.00. This claim is secured by the following mortgaged real property owned by the Debtor:

**Property in Otter Tail County, Minnesota, described as follows:**

**South Half (S1/2) of Lot Two (2), Section Seven (7), Township One Hundred Thiry-Six (136) North, Range Forty-Three (43) West & Southeast Quarter of the Southwest quarter (SE1/4-SW1/4) Section Seven (7), Township One Hundred Thirty-Six (136) North, Range Forty-Three (43) West.**

Except for the May 2026 payment, this class will be paid pursuant to the terms of the contract. The debtor shall make payments directly to the creditor, and no Trustee fees will be paid on this claim. The May 2026 payment in the amount of $15,654.28 will be paid on or before December 15, 2026 by the Debtor.

**Class 2: FBN Finance, LLC.** Class 2 is the claim of FBN Finance, LLC, c/o Compeer Financial, PCA and Compeer Financial, FLCA, as attorney-in-fact and servicing agent for FBN Finance, LLC ("FBN"). The debtor and FBN have entered into a stipulation with the following terms. Should the debtor fail to obtain confirmation of a plan prior to December 15, 2026, the entirety of such stipulated terms are null and void and FBN retains its rights to object to confirmation of the plan, seek dismissal or conversion of this case, and proceed with its adversary proceeding against the debtor:

1. The debtor and FBN stipulate that FBN's claim is valued at One Million, One Hundred and Fifty Thousand Dollars ($1,150,000.00) through December 15, 2026. FBN's claim in the amount of One Million, One Hundred and Fifty Thousand Dollars ($1,150,000.00) consists of all principal, interest, late fees, and attorneys' fees and costs incurred through December 15, 2026, after application of a previous $141,697.26 payment to FBN, which was authorized by the Court's Order authorizing the sale of the "Januszewski" real estate, free and clear of all liens and encumbrances (Doc. 78). To the extent that the above-stipulated $1,150,000.00 of indebtedness includes post-petition interest, attorneys' fees, costs, disbursements and other charges, the debtor and FBN expressly stipulate that

the same are recoverable under 11 U.S.C. 506(b), for the reasons stated in FBN's Objection (Doc. 109) to a predecessor version of this Modified Plan, and properly incorporated into the above-stipulated debt due and owing to FBN as of December 15, 2026. In the event that FBN is paid a minimum of $693,000.00 by December 15, 2026 as set forth in Paragraphs 2 and 3 immediately below in this Class 2 Claim, and provided that the debtor timely provides fully executed loan documents as set forth under Paragraph 3 below in this Class 2 Claim, FBN expressly stipulates that the total debt owed by the debtor to FBN is $1,150,000.00 as of the date and time immediately prior to the forthcoming minimum payment of $693,000.00 to FBN.

2. The debtor, by and through his attorney, will wire or deliver a cashier's check in the amount of $1,109,799.03 (the Januszewski sales proceeds currently held in a trust account maintained by debtor's law firm) to the Chapter 12 Trustee by December 15, 2026, pursuant to the Court Order dated May 12, 2026 (Docket 78). The Chapter 12 Trustee will hold such check until confirmation of the plan. From the amount and as quickly as administration permits the Trustee will disburse a minimum of $693,000.00 to FBN as a partial paydown of the $1,150,000.00 of stipulated indebtedness due and owing by the debtor to FBN. For the purposes of the stipulation, the $693,000.00 payment by the Trustee may increase depending on the result of the Trustee's administration.

3. Within thirty (30) days of FBN's receipt of the above-referenced $693,000.00 payment from the Trustee, the debtor shall sign and deliver to FBN certain loan documents and UCC and/or EFS documents requested by FBN (e.g. a promissory note, one or more mortgages, security agreement(s), and EFS/CNS-1 forms). The indebtedness under these loan documents will be the $1,150,000 as stated above, less the Trustee's disbursement of approximately $693,000. The loan documents will reflect the terms of the remaining restructured loan as set forth below. Such loan documents shall include standard terms, including without limitation provisions contractually obligating the debtor to pay for FBN's attorneys' fees and other collection costs and late charges; said terms in the restructured loan documents shall be substantially similar to the attorneys' fees and late charges provisions existing under the prepetition loan documents between FBN and the debtor. The debtor's restructured loan due and owing to FBN – which the parties believe will be valued at approximately Four Hundred and Fifty Seven Thousand Dollars ($457,000.00) following the Trustee's anticipated payment of approximately $693,000.00 by December 15, 2026, will be secured with the following property owned by the debtor: (i) the debtor's current and after-acquired machinery and equipment; (ii) the debtor's 2027, 2028, 2029, and 2030 crops; (iii) the debtor's "Farmstead" listed in paragraph 1.1 on the debtor's amended schedules (Doc. 18, p. 4); (iv) the debtor's "Brendt Dairy Farm" listed in paragraph 1.2 on the debtor's amended schedules (Doc. 18, p. 5); and (v) the debtor's "Lake Lot" listed in paragraph 1.3 on the debtor's amended schedules (Doc. 18, p. 5). The debtor waives any exemptions that he has or may claim to have in any of the collateral listed above in roman numerals (i), (ii), (iii), (iv), and (v) of this paragraph.[1] The debtor is authorized to convey and shall convey both his and his spouse's interest(s) in the collateral listed above in roman numerals (i), (ii), (iii), (iv), and (v) of this paragraph by the debtor's sole signature, notwithstanding Minnesota Statutes Section 507.02 and as provided by the Stipulation between the Debtor and spouse. The restructured loan shall be evidenced by a seven (7) year promissory note, with a four (4) year balloon, and shall have an interest rate of Eight Percent (8.0%), which shall begin to accrue on December 15, 2026 at said 8.0% rate. The first payment due on the restructured note shall be due on December 1, 2027, with annual payments on December 1 of each following year for the remaining term of the restructured loan. FBN agrees that in the event that the debtor defaults under the loan terms, FBN will collect from its non-homestead collateral prior to initiating foreclosure proceedings against the debtor's

[1] The debtor stipulates and represents that the real estate identified in roman numerals (iii), (iv) and (v) are subject to various senior liens, with the approximate values of said senior liens being listed in Class 1, Class 3, and Class 5 of this Modified Plan.

"Farmstead" listed in paragraph 1.1 on the debtor's amended schedules (Doc. 18, p. 4)

4. Within thirty (30) days following the approximately $693,000.00 payment from the Trustee to FBN, debtor will execute and deliver to FBN non-merger deed(s) in lieu of foreclosure from the debtor, on the debtor's above-referenced "Brendt Dairy Farm" listed in paragraph 1.2 on the debtor's amended schedules (Doc. 18, p. 5); and the "Lake Lot" listed in paragraph 1.3 on the debtor's amended schedules (Doc. 18, p. 5). The Debtor is authorized to convey and shall convey both his and his spouse's interest(s) in the land by the debtor's sole signature, notwithstanding Minnesota Statutes Section 507.02 and as provided by the Stipulation between the Debtor and spouse. The deed(s) in lieu shall be in a form acceptable to FBN's counsel. There shall be a 30-day cure period for any defaults. The deed(s) in lieu shall be held in escrow by FBN's attorney. If there is a default that is not cured within 30 days of FBN providing written notice of the default to the debtor's last-known address and the last-known address of the debtor's current bankruptcy law firm, FBN may record any deed(s) in lieu provided by debtor to FBN pursuant to this Modified Plan, and the recording of such deed(s) in the event of an uncured default shall not be considered a violation of the automatic stay. There shall be arms-length sales for any and all real estate taken by FBN via deeds in lieu. The debtor shall be required to provide FBN with written notice of any default that he becomes aware of with respect to a senior lien encumbering the additional real estate collateral to be pledged to FBN pursuant to this Modified Plan within three (3) days of the debtor learning of such default.

5. In the event that (a) FBN receives the above-referenced approximately $693,000.00 payment from the Trustee by December 15, 2026, and (b) the debtor timely delivers fully executed loan documents, security agreements, and any other documentation (where necessary in recordable form) to further collateralize and secure the aforementioned restructured loan from FBN to the debtor as set forth above, FBN shall release its security interests that currently encumber assets owned by the debtors' parents (i.e., Peter Restad and Deborah Restad). In addition, FBN agrees to no further disbursements from the Trustee on account of its claim. Further, if the condition precedents set forth above in items (a) and (b) in this paragraph are satisfied, FBN shall unconditionally release Peter Restad and Deborah Restad from any liability that either or both of said individuals have to FBN as it relates to the debt of Casey Restad. Finally, if the condition precedents set forth above in items (a) and (b) in this paragraph are satisfied, FBN shall dismiss its state court breach of contract action (Court File No. 56-CV-25-2236), with prejudice, and FBN shall also dismiss its Adversary Proceeding against the debtor (Adv. 26-06027), with prejudice.

6. The debtor agrees that the debtor's failure to timely deliver signed documents under Paragraphs 3 and 4 of this stipulation constitutes a breach of the stipulation, is a material default, and that the court may dismiss or convert the case pursuant to 11 U.S.C. § 1208(c)(6). The debtor stipulates that the execution, filing, and/or recordation of the documents referenced in Paragraph 3 (e.g. a promissory note, one or more mortgages, security agreement(s), and EFS/CNS-1 forms) as the case may be shall not be considered a violation of the automatic stay.

7. The debtor agrees that the debtor's failure to make a payment due under either Paragraphs 2 or 3 under Class 2 constitute a breach of this stipulation, is a material default, and that the court may dismiss or convert the case pursuant to 11 U.S.C. § 1208(c)(6).

8. The debtor agrees that FBN's treatment contained herein may not be modified under a proposed modification of the plan pursuant to 11 U.S.C. § 1229.

9. For so long as the secured indebtedness remains due to FBN, Debtor will comply with the following requirements:

a. Prior to confirmation, Debtor shall provide FBN with copies of all monthly operating reports and bank statements provided to the Chapter 12 Trustee, by forwarding the same electronically to FBN's counsel of record simultaneous with their transmission to the Trustee's office. After confirmation of the plan, all reports and documents required to be supplied in this paragraph to the Trustee will be supplied directly from Debtor to FBN. After completion of the plan, the debtor will send monthly operating reports, in the form previously supplied to the Chapter 12 Trustee, and bank statements directly to FBN.
b. Debtor shall maintain insurance on all property subject to mortgages and security interests in favor of FBN, with deductibles consistent with those carried historically, with FBN named as loss payee, or an additional insured where applicable, insuring such property for its full, insurable value against perils covered by fire and extended coverage policies of insurance.
c. Debtor shall provide FBN with copies of all receipts, invoices, bills of sale, or other documents evidencing the purchase or sale of farm products by Debtor. FBN may request such documentation no more than once per month.
d. On or before April 15 of each calendar year during the term of the above-identified restructured note, the Debtor shall provide his annual balance sheets and his annual tax returns to FBN for the prior calendar year. Should the Debtor request an extension to file tax returns, Debtor shall provide his annual tax return by the deadline to file under that extension.

10. The debtor stipulates that, in the event the debtor breaches the terms of the stipulated provisions of this Class 2 Claim of the Plan, FBN is permitted to increase the indebtedness owed by the debtor to account for additional interest, late fees, and attorneys' fees and costs that FBN will incur after December 15, 2026.

**Class 3: Mary Groesbeck.** Mary Groesbeck holds a claim in the amount of 67,713.00, which is secured by a lien on Parcel A, legally described as follows:

**The residential real estate situated at 23361 Lida Drive, Pelican Rapids, in the County of Otter Tail, in the State of Minnesota, and zip code of 56572, known with the full legal description as follows, to wit:**
**That part of the Southeast Quarter of the Southwest Quarter (SE1/4-SW1/4) in Section Twenty (20) and that part of the Northeast Quarter of the Northwest Quarter (NE1/4-NW1/4) in Section Twenty-Nine (29), all in Township One Hundred Thirty-Six (136) North, Range Forty-Two (42) West of the Fifth Principal Meridian in Otter Tail County, Minnesota, described as follows:**
**Commencing at a found iron monument which designates the northwesterly corner of Lot One (1), Block One (1) of Lida West, said plat is on file and of records in the office of the Recorder in said County; thence South 03 degrees 49 minutes 57 seconds East 93.93 feet on an assumed bearing along the westerly line of said Lot One (1) to a found iron monument; thence South 86 degrees 10 minutes 02 seconds West 66 feet to a found iron monument on the westerly line of a dedicated public road according to said Lida West, said point is the point of the beginning; North 03 degrees 49 minutes 57 seconds West 337.95 feet along the westerly line of said dedicated public road to a found iron monument; thence northwesterly continuing along the westerly line of said dedicated public road on a curve concave to the southwest, having central angle of 72 degrees 49 minutes 41 seconds and a radius of 35.00 feet, for a distance of 44.49 feet (chord bearing North 40 degrees 14 minutes 47 seconds West), to a found iron monument at a point of reverse curvature; thence northwesterly continuing along the westerly line of said dedicated public road on a curve concave to the northeast, having a central angle of 47 degrees 39 minutes 12 seconds and a radius of 70.00 feet, for a distance of 58.22 feet (chord bearing North 52 degrees 50 minutes 02 seconds West) to a found iron monument; thence South 87 degrees 49 minutes 02 seconds West 32.62 feet along the**

**southerly line of said dedicated public road to a found iron monument; thence northwesterly continuing along the southerly line of said dedicated public road, on a curve concave to the northeast, having a central angle of 51 degrees 05 minutes 21 seconds and a radius of 333.00 feet, for a distance of 296.93 feet (chord bearing North 66 degrees 38 minutes 17 seconds West) to an iron monument; thence South 48 degrees 54 minutes 23 seconds West 68.58 feet; thence South 08 degrees 15 minutes 35 seconds West 611.45 feet to an iron monument on the northerly line of said dedicated public road; thence South 88 degrees 08 minutes 58 seconds East 270.91 feet along the dedicated public road; thence North 86 degrees 45 minutes 25 seconds East 140.20 feet continuing along the northerly line of said dedicated public road to a found iron monument; thence northeasterly along the northerly and easterly line of said dedicated public road on a curve concave to the northwest, having a central angle of 90 degrees 35 minutes 22 seconds and a radius of 127.00 feet, for a distance of 200.80 feet (chord bearing North 41 degrees 27 minutes 44 seconds East) to the point of beginning. The above-described tract contains 6.16 acres.**
**Together with all hereditaments and appurtenances belonging thereto (the Property). Purchaser has previously taken possession of the Property as a tenant prior to the date hereof.**

This class will be paid pursuant to the terms of the contract for deed. The Debtor is current on monthly payments, and the debt is $67,713.00 as of July 28, 2026. The debtor shall make payments directly to the creditor, and no Trustee fees will be paid on this claim.

**Class 4: William Januszewski.** Class 4 consists of the secured claim of William Januszewski in the amount of $91,655.59 and secured by property described in Exhibit D. This property was sold and this claim was paid in full from the sale proceeds. No Trustees fees will be paid on this class. The net proceeds of $1,109,799.03 from the sale of the collateral securing this claim remain in trust. Under this Plan, said proceeds are released to the Chapter 12 Trustee to make plan payments as appropriate as provided herein.

**Class 5: Minnesota National Bank.** Except as expressly modified by this Plan, Minnesota National Bank ("MNB") retains its mortgage and lien against the Lake Lot (described in Exhibit C) and any other collateral not expressly listed below. Except as expressly modified by this Plan, all terms and conditions of MNB's existing loan documents shall remain in full force and effect.

The Debtor has received Court authority to sell the Tillable Acres identified on Exhibit FF at a gross sales price of $710,040.00, less expenses. Net sale proceeds shall be deposited in the Debtor's attorney's trust account. All net sale proceeds shall be paid directly by the debtor to MNB within seven (7) days of the entry of an order confirming this plan, and such proceeds will be applied to MNB's indebtedness. Upon MNB's actual receipt of all net sale proceeds required to be paid to it, MNB shall: (a) release any interest it holds in the 13.91-acre homestead portion of the real property described in Exhibit FF; and (b) release Amber Restad from her personal liability on the indebtedness. Neither release shall become effective until MNB has actually received the required net sale proceeds.

The indebtedness owed by the debtor to MNB as of November 2, 2026 is $833,270.70, consisting of the following: $738,548.00 principal; $69,519.15 interest; $4,894.57 discounted late fee; $20,308.98 attorney fees, less the funds received from the sale of the Tillable Acres (approximately $704,853.12). Interest shall accrue at the rate of 7.75% on the principal balance until the date of closing of the Tillabe Acres, but no interest shall accrue on the net sale proceeds between the date of closing and confirmation of this plan. MNB shall not be entitled to collect any additional attorney fees except as stated above. The remaining indebtedness

shall have a maximum principal balance of $833,270.70 less the funds received from the sale of the Tillable Acres (approximately $704,853.12). The remaining indebtedness of approximately $128,417.58 shall bear interest at the rate of 7.75% per annum and shall be amortized in equal monthly payments over a period of forty-eight (48) months, with the payment amount established so that the indebtedness is paid in full no later than forty-eight (48) months after commencement of such payments. These payments will be paid directly by the debtor. MNB shall retain its liens on all collateral not expressly released under this Plan until the remaining indebtedness owing under this plan to MNB has been paid in full.

If the sale of the Tillable Acres is not completed and MNB does not receive the net sale proceeds by January 31, 2027, all amounts then due under the existing loan documents will be immediately due and payable on January 31, 2027.

**Class 6: Amber Restad.** Class 6 consists of the claim of spouse Amber Restad. Amber Restad and the Debtor are involved in active dissolution proceedings, filed on April 23, 2024. Amber Restad holds a marital interest in various property of the bankruptcy estate. In mediation ordered by the state court, Amber Restad and the Debtor agreed to valuing Amber Restad's claim in the amount of $660,000.00. To pay this claim, Debtor shall do as follows:

A. Within the later of 14 days of confirmation and within 10 days of the state court's approval of the parties' dissolution of marriage, Debtor will surrender to Amber Restad the 13.91-acre homestead portion of the real property described in Exhibit FF, free and clear of any encumbrances, which the Debtor and Amber Restad value at $500,000.00. The remainder of parcel described as FF shall be transferred to Casey Restad by Warranty Deed. The lien of Minnesota National Bank is accepted by the Debtor. This shall be accomplished by warranty deed. The Debtor and Amber Restad shall each pay their own attorneys' fees but shall equally share the recording fees and any other ordinary closing costs from the closing company for such transfer;
B. Within the later of 14 days of confirmation of this Plan and within 10 days of the state court's approval of the parties' dissolution of marriage, the Trustee shall pay $100,000.00 from the Januszewski sales proceeds held in trust, pursuant to this Court's order dated May 12, 2026 (Doc 78), to Amber Restad; AND
C. Over the term of the Plan, the Debtor shall pay to Amber Restad equal annual payments of $20,000.00, the sum of which will equal $60,000. The first of these payments shall be made by November 20, 2027. The debtor will make these payments directly to Amber Restad.

To the extent that Amber Restad's claim involves property of the bankruptcy estate, the automatic stay is lifted upon confirmation to allow the state court to approve the Debtor's and Amber Restad's agreement on her marital interest claim. The Debtor filed a motion to approve the settlement agreement with Amber Rested ( see Docket 105), which was heard and approved. The approval by the State Court will be sought and is expected to be approved. The Debtor's payments and indemnification obligations owed to Amber Restad pursuant to the terms of this Plan and the parties' Mediated Settlement Agreement dated August 6, 2026 shall be deemed to be non-dischargeable in bankruptcy.

**Class 7: Midwest Machinery.** Class 13 is the Claim of Midwest Machinery in the amount of $34,657.11. The claim will be treated as secured and paid by 3 payments of $11,552.37 due every year on January 15, commencing January 15, 2027. The claim is secured by the 618C corn head. This claim will be paid directly by the debtor.

## PART 7: PRIORITY AND OTHER ADMINISTRATIVE EXPENSE CLAIMS

Part 7 consists of all claims entitled to priority under § 507, which shall be paid prior to payment of

non-priority, general unsecured claims. These payments will be paid through the Chapter 12 Trustee except as set forth below.

A. Minnesota Department of Revenue filed two priority claims in the total amount of $12,204.62. The claim will be paid by the Trustee using the sale proceeds from the Januszewski sale, as referenced in Part 6, Class 4.
B. IRS Claim filed a priority claim in the amount of $108,284.89. The claim will be paid by the Trustee using the sale proceeds from the Januszewski sale, as referenced in Part 6, Class 4.

## PART 8: NON-PRIORITY UNSECURED CLAIMS

**Class 1: Allowed Non-Priority Unsecured Claims.** Class 1 consists of allowed non-priority unsecured claims, including, but not limited to, allowed non-priority unsecured claims of creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, allowed non-priority unsecured claims resulting from the value of a secured claim being of a value less than the creditor's collateral, allowed non-priority claims of those secured creditors whose claims are determined to be unsecured, and allowed non-priority unsecured claims for taxes and penalties which are not included in any other Class. This class includes the following currently allowed claims:

| Creditor | Claim Amount |
|---|---|
| IRS (non-priority) | $879.47 |
| State of Minnesota (non-priority) | $5,393.17 |
| Environmental Tillage Systems | $5,468.02 |
| JPMorgan Chase Bank, N. A. s.b.m.t Chase Bank USA, N.A | $8,798.59 |
| ABST Law | $15,320.04 |
| John Deere Financial,(see class 7 – debtor intends to object) | $80,677.78 |
| Deere & Company (see class 7 – debtor intends to object) | $44,293.66 |
| PHI Financial | $90,035.93 |
| FBN Finance, LLC | $767,000.00 |
| Peter Restad | $225,000.00 |
| Debbi Restad | $220,500.00 |
| **Total:** | **$1,463,366.66** |

Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim. After the Trustee's payment of $100,000 payment to Amber Restad under Part 6, Class 6, and the Trustee's payment of $120,489.51 to priority claimants under Part 7, the Trustee will disburse the remainder of the Januszewski sales proceeds, less Trustee's fees, to this class. The Trustee will hold in Trust Deere and Company's and John Deere Financial's pro rata portion of the Januszewski sales proceeds until final disposition of claims objections filed by the debtor. If such objections are not filed by February 1, 2027, the Trustee will disburse all held funds to these creditors.

The Debtor shall pay the remainder of these claims in full by the end of the term of the plan. Payments made to this Class shall be disbursed by the Trustee pro-rata based on the amount of allowed claims existing on the date of disbursement, except that the Trustee will pay FBN a minimum of $693,000 from the Januszewski sales proceeds, consisting of FBN's pro rata portion of those proceeds, Peter Restad's pro rata portion of those

proceeds, and Debbi Restad's pro rata portion of those proceeds. Peter and Debbie Restad have consented to FBN's receipt of their pro rata portion of the Januszewski sales proceeds. Following the disbursement of their pro rata portion of the proceeds, Peter and Debbie Restad have also consented to receive no further disbursements from the Trustee on account of their unsecured claims.

**Class 7: Deere & Company** Class 7 consists of the claims of Deere & Company ("Deere") in the amount of $44,293.66. The creditor filed timely proofs of claims, but Deere had possession of the collateralized equipment and disposed of the collateral in violation of the automatic stay and in a non-commercially reasonable manner. Debtor retains his claim against Deere for wrongful disposal of equipment post-petition and for failure to hold a commercially reasonable sale. The Debtor believes that the damage will exceed the claims. The debtor objects to these claims and will file necessary objections. If the disposition of the Claim Objections deems these claims allowed, to the extent that they are allowed, the claims of Deere will be included in Part 8, Class 1. If the claim is disallowed, they shall receive no distribution under this claim. To the extent that the Debtor's claims against Deere yields any proceeds, said proceeds will be turned over to the Chapter 12 Trustee for distribution under Part 8, Class 1.

**Class 8: Rabo AgriFinance.** Class 8 consists of the unsecured claims Rabo AgriFinance in the amount of $184,385.20.00. This claim is disputed and is unsecured. No timely proof of claim was filed, and as a result, no payment is due to the creditor.

**Class 9: Syngenta Seed, LLC.** Class 9 consists of the claim of Syngenta Seeds, LLC. This claim is disputed by the debtor and is unsecured. This creditor did not file a timely claim. As a result no payment is due to this class of creditors.

**Class 10: Park Region Coop.** Class 10 consists of the unsecured claims of Park Region Coop. This creditor did not file a timely claim. As a result, no payment is due to this class of creditors.

**Class 11: RCIS.** Class 11 consists of the unsecured claims of RCIS. This creditor did not file a timely claim. As a result, no payment is due to this class of creditors.

**Class 12: RDO Equipment.** Class 12 consists of the unsecured claims of RDO Equipment. This creditor did not file a timely claim. As a result, no payment is due to this class of creditors.

## PART 9: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

The debtor will not utilize Section 1232.

## PART 10: EXECUTORY CONTRACTS AND LEASES

Part 10 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this Part. The debtor assumes the following executory contracts and leases: NONE

## PART 11: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to continue his farming operations and make the plan payments out of farm or other income. The debtor's projections of income, operating expenses, and plan payments are attached as

Exhibit B.

## PART 12: RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference. Either the debtors or any creditor may record this plan and the Order confirming this plan with the Office of the County Recorder of each county in which the debtor has an interest in real estate without violation of the automatic stay.

## PART 13: GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the debtor and his property for the term of the plan. Property of the estate vests in the Debtor upon dismissal, conversion, or completion of plan payments due during the term of the plan.

2. As part of the continuing farm operation, the debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

3. For the duration of the Chapter 12 plan, the debtor shall seek court approval to obtain credit or incur debt outside the ordinary course of business.

4. For the duration of the Chapter 12 plan, the debtors shall seek court approval to use, sell, or lease property outside the ordinary course of business.

/s/ David C. McLaughlin
FLUEGEL, ANDERSON, MCLAUGHLIN
& BRUTLAG, CHARTERED
David C. McLaughlin
Attorney for Debtor
129 2nd Street NW
Ortonville, MN 56278
(320) 839-2549
Attorney License #127383
dmclaughlin@fluegellaw.com

Signed: /s/ Casey P. Restad

Debtor 1: Casey P. Restad

Dated: November 2, 2026

LIQUIDATION ANALYSIS

**EXHIBIT A**

RESTAD

| Asset | Value | Lien | 2nd Lien | Marital Interest of Amber Restad * | Exemption | NE Assets |
|---|---|---|---|---|---|---|
| Real Estate: Parcel A - Casey's House | $ 320,000.00 | $ 74,319.00 | $ - | $ 30,000.00 | $ 215,681.00 | $ - |
| Real Estate: Parcel B - Berndt Dairy Farm | $ 392,820.00 | $ 105,607.00 | $ - | $ 30,000.00 | | $ 257,213.00 |
| Real Estate: Parcel C - Lake Lot | $ 494,700.00 | $ 40,000.00 | | $ - | $ 294,319.00 | $ 160,381.00 |
| Real Estate: Parcel D Januszewski 282 acres | $ 1,343,151.88 | $ 91,655.59 | $ 141,697.26 | $ 100,000.00 | $ - | $ 1,009,799.03 |
| Real Estate: Parcel E Shop & Skinny Land | $ 468,000.00 | | | | | $ 468,000.00 |
| Real Estate: Parcel FF Haugerup Property | $ 1,260,000.00 | $ 760,000.00 | | $ 500,000.00 | | $ - |
| Dog | $ 1.00 | | | | $ 1.00 | $ - |
| Checking, bank accounts | $ 1.35 | $ 1.35 | | | | $ - |
| Appliances/Furniture | $ 5,000.00 | | | | $ 5,000.00 | $ - |
| Electronics | $ 2,000.00 | | | | $ 2,000.00 | $ - |
| Clothing | $ 2,500.00 | | | | $ 2,500.00 | $ - |
| Farm Equipment Proceeds | $ 301,675.00 | $ 288,675.00 | | | $ 13,000.00 | $ - |
| Ford F-150 79 | $ 1,500.00 | | | | | $ 1,500.00 |
| Ford Expedition 2019 | $ 16,000.00 | | | $ 16,000.00 | | $ - |
| Ford Expedition 2021 | $ 30,000.00 | | | | $ 10,000.00 | $ 20,000.00 |
| SeeDoo | $ 3,000.00 | | | | | $ 3,000.00 |
| Dock | $ 23,500.00 | | | | $ 13,500.00 | $ 10,000.00 |
| Baseball Card Collection | | | | | | $ - |
| Education | $ 9,858.00 | | | | $ 9,858.00 | $ - |
| Inputs | $ 15,000.00 | | | | | $ 15,000.00 |
| Life Insurace - Term | $ - | | | | $ - | $ - |
| Claims Against Deere | $ - | $ - | | | $ - | $ - |
| Totals | $ 4,688,707.23 | $ 1,360,257.94 | $ 141,697.26 | $ 676,000.00 | $ 565,859.00 | $ 1,944,893.03 |

* Amber Restad's marital interest, as settled in the dissolution proceeding, to be approved by the Bankruptcy Court.

The value of Parcel D is the Value of what it was sold for (1,400,000.00 minus closing costs).
The value of Parcel FF was deduced $100,000 to account for the Debtor and Amber Restad's agreeement that the 13.91 acre homesite was worth $500,000.

# EXHIBIT B

| November 2026 Cash Prices CHS | |
|---|---|
| Corn Price | $ 4.05 |
| Soybean Price | $ 10.22 |

| | Price/Ton | Price/lb |
|---|---|---|
| Urea | $ 575 | $ 0.29 |
| AMS | $ 515 | $ 0.26 |
| Potash | $ 505 | $ 0.25 |
| DAP | $ 815 | $ 0.41 |

| | Price/Gal |
|---|---|
| Zinc 9% | $ 13.50 |

| | Seed Price/Unit | Crop Insurance - 70% MP Coverage |
|---|---|---|
| Corn | $ 145.00 | $ 6.43 |
| Soybeans | $ 51.00 | $ 3.78 |

| Field | Acres | 2026 Crop | Yield | Total Bu. | Price | Total Rev. | Rev./Acre |
|---|---|---|---|---|---|---|---|
| Egge Conor's | 24 | Corn | 150 | 3,600 | $ 4.05 | $ 14,580 | $ 608 |
| Egge Stone Pit | 55 | Corn | 165 | 9,075 | $ 4.05 | $ 36,754 | $ 668 |
| MK's East Olaf | 17 | Corn | 165 | 2,805 | $ 4.05 | $ 11,360 | $ 668 |
| Egge Dotty's | 62 | Corn | 200 | 12,400 | $ 4.05 | $ 50,220 | $ 810 |
| Grant Scheer's | 292 | Soybeans | 60 | 17,520 | $ 10.22 | $ 179,054 | $ 613 |
| North of Berndt's | 40 | Soybeans | 55 | 2,200 | $ 10.22 | $ 22,484 | $ 562 |
| North of Jason's | 22 | Soybeans | 55 | 1,210 | $ 10.22 | $ 12,366 | $ 562 |
| Total | 512 | | | | | | |

| Field | Pot. #'s | K Cost/Ac. | DAP #'s | DAP Cost/Ac. | AMS #'s | S Cost/Ac. | Urea #'s | N Cost/Ac. | Zn Rate | Price/Ac |
|---|---|---|---|---|---|---|---|---|---|---|
| Egge Conor's | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 |
| Egge Stone Pit | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 |
| MK's East Olaf | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 |
| Egge Dotty's | 100 | $ 25 | 75 | $ 31 | 100 | $ 26 | 300 | $ 86.25 | 0.25 | $ 3.38 |
| Grant Scheer's | - | $ - | - | $ - | 0 | $ - | 0 | $ - | | $ - |
| North of Berndt's | - | $ - | - | $ - | 0 | $ - | 0 | $ - | | $ - |
| North of Jason's | - | $ - | - | $ - | 0 | $ - | 0 | $ - | | $ - |

| Field | Fert. Exp. | Fert. Exp/Ac. | Seed Variety | Seed Exp. | Seed Exp/Ac. | Chem. Exp. | Chem. Exp/Ac. |
|---|---|---|---|---|---|---|---|
| Egge Conor's | $ 4,109 | $ 171 | E612-Conv | $ 1,216 | $ 51 | $ 526 | $ 21.93 |
| Egge Stone Pit | $ 9,415 | $ 171 | E612-Conv | $ 2,791 | $ 51 | $ 1,206 | $ 21.93 |
| MK's East Olaf | $ 2,910 | $ 171 | E612-Conv | $ 863 | $ 51 | $ 373 | $ 21.93 |
| Egge Dotty's | $ 10,614 | $ 171 | E612-Conv | $ 3,596 | $ 58 | $ 1,360 | $ 21.93 |
| Grant Scheer's | $ - | $ - | Enlist | $ 14,892 | $ 51 | $ 13,117 | $ 44.92 |
| North of Berndt's | $ - | $ - | Enlist | $ 2,040 | $ 51 | $ 1,797 | $ 44.92 |
| North of Jason's | $ - | $ - | Enlist | $ 1,122 | $ 51 | $ 988 | $ 44.92 |
| | $ 27,048 | | | $ 26,522 | | $ 19,367 | |

| Field | Rent Exp. | Rent Exp./Ac. | Crop Ins. | Total Exp | Op. Margin | Op. Inc/Ac. |
|---|---|---|---|---|---|---|
| Egge Conor's | $ 3,000 | $ 125 | $ 91 | $ 8,944 | $ 5,636 | $ 238.63 |
| Egge Stone Pit | $ 6,875 | $ 125 | $ 208 | $ 20,496 | $ 16,258 | $ 299.38 |
| MK's East Olaf | $ 2,125 | $ 125 | $ 64 | $ 6,335 | $ 5,025 | $ 299.38 |
| Egge Dotty's | $ 7,750 | $ 125 | $ 234 | $ 23,554 | $ 26,666 | $ 433.88 |
| Grant Scheer's | $ 63,580 | $ 218 | $ 1,878 | $ 93,466 | $ 85,588 | $ 299.54 |
| North of Berndt's | $ - | $ [illegible] | $ 257 | $ 4,094 | $ 18,390 | $ 466.18 |
| North of Jason's | $ - | $ [illegible] | $ 141 | $ 2,252 | $ 10,115 | $ 466.18 |
| | $ 83,330 | | $ 2,873 | $ 159,140 | | |

| | |
|---|---|
| Revenue | $ 326,818.60 |
| Total Fertilizer | $ 27,047.63 |
| Total Seed | $ 26,522.00 |
| Total Chemcial | $ 19,366.62 |
| Total Crop Ins. | $ 2,873.46 |
| Total Rent | $ 83,329.80 |
| Total Inputs | $ 159,139.51 |
| **Operating Inc.** | **$ 167,679.10** |

| | |
|---|---|
| Fuel | $ (12,500.00) |
| Electric & Phone | $ (900.00) |
| R&M | $ (3,000.00) |
| Real Estate Taxes | $ (13,312.00) |
| Other | $ (5,000.00) |
| Projected Living Expenses | $ (100,375.09) |
| Other Farm Income - Brad | $ 21,000.00 |
| Government Payments - Farmer Bridge Assistance by 2/28/26 | $ 45,696.12 |
| Net Profit | $ 99,288.13 |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: BKY 25-60780

Chapter 12

Casey P. Restad,

Debtor

**NOTICE OF CONTINUED HEARING ON CONFIRMATION OF MODIFIED CHAPTER 12 PLAN OF REORGANIZATION DATED NOVEMBER 2, 2026**

PLEASE TAKE NOTICE that the continued hearing on the Confirmation of Modified Chapter 12 Plan Dated November 1, 2026, at **1:30 p.m**. on **Tuesday, December 1, 2026**. The hearing will be conducted telephonically. Please contact Judge Fisher's Courtroom Deputy by email at mnb_fisher_hearings@mnb.uscourts.gov(link sends e-mail) or by telephone at 651-848-1061 to obtain the dial-in information. Dial-in instructions for telephonic hearings will also be displayed the day prior to the hearing on Judge Fisher's public calendar here: https://www.mnb.uscourts.gov/judges-calendars. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

A copy of the modified plan was served upon all parties November 2, 2026, after the filing.

OBJECTIONS TO CONFIRMATION: An objection to confirmation of the Plan shall be made under Local Rule 3015-3. Seven days prior to the hearing is the last day to timely deliver an objection, and ten days prior to the hearing is the last day to timely mail an objection. The objection must be filed not later than one day after service.

Dated this 2nd day of November 2026.

Respectfully submitted,

FLUEGEL, ANDERSON, MCLAUGHLIN,
& BRUTLAG, CHARTERED

/e/ David C. McLaughlin
David C. McLaughlin
Attorney for Debtor
129 2nd Street NW
Ortonville, MN 56278
(320) 839-2549
Attorney License #127383
dmclaughlin@fluegellaw.com